# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE**

| | |
|---|---|
| _____ ) | |
| NEW AMERICAN KEG, d/b/a ) | |
| AMERICAN KEG COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Ct No. 20-00008 |
| UNITED STATES ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| NINGBO MASTER INTERNATIONAL ) | |
| TRADE CO., LTD., GUANGZHOU ) | |
| JINGYE MACHINERY CO., LTD., ) | |
| ) | |
| Defendant-Intervenors ) | |
| _____ ) | |

## DEFENDANT-INTERVENORS' REMAND COMMENTS

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
**DEKIEFFER & HORGAN, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com

Date: November 18, 2021          *Counsel to Defendant-Intervenors*

# TABLE OF CONTENTS

I.    Commerce's Use of the Mexican Labor Rate for the
      Labor Surrogate Value Is Not an Abuse of Discretion
      and Is Supported by Substantial Evidence ................................. 2

II.   Conclusion and Prayer for Relief ............................................ 14

# TABLE OF AUTHORITIES

## CASES

*Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ................................................................. 4

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)) ......... 7

*Changzhou Trina Solar Energy Co. v. United States*, 450 F. Supp. 3d 1301 (Ct. Int'l Trade 2020) .................................................. 8

*Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985) ........................................................................... 6

*McKechnie Bros. (N.Z.) Ltd. v. United States Department of Commerce*, 735 F. Supp. 1066 (Ct. Int'l Trade 1990) ........................... 6-7

*Rose Bearings, Ltd. v. United States*, 751 F. Supp. 1545 (1990) .......... 5-6

*Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) .................................................. 3

*Taian Ziyang Food Co. v. United States*, 783 F. Supp. 2d 1292 (Ct. Int'l Trade 2011) ...................................................... 11

*Torrington Co. v. United States*, 779 F. Supp. 1395 (Ct. Int'l Trade 1991) ................................................................... 5

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) .... 4

*Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378 (Fed. Cir. 2014) ...................................................... 11

## STATUTES

5 U.S.C. § 702 ................................................................. 3, 6

19 U.S.C. § 1677b(c)(1) ...................................................... 12

28 U.S.C. § 2636......................................................................... 3

ADMINISTRATIVE DECISIONS

*Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 4,852 (Dep't Comm. January 2017).......................................... 8

*Refillable Stainless Steel Kegs From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 13,34 (April 5, 2019) ................................. 10

*Seamless Refined Copper Pipe and Tube From the People's Republic of China: Preliminary Results of Administrative Review; 2014-2015*, 81 Fed. Reg. 95,110 (Dep't Comm. 2016)................................................. 10

*Wooden Bedroom Furniture From the People's Republic of China: Final Results and Final Rescission in Part*, 75 Fed. Reg. 50,992 (August 18, 2010)....................................................................9-10

# GLOSSARY

CPI..............................................................................Consumer Price Index

ILC.................. International Labor Comparisons, the Conference Board

INEGI....... Institute of Statistics and Geography, Government of Mexico

Defendant-Intervenors Ningbo Master International Trade Co., Ltd. ("Ningbo Master") and Guangzhou Jingye Machinery Co., Ltd. ("Jingye") respectfully file comments on the Department's remand redetermination.  The Court remanded three issues to Commerce: 1) reconsider the Malaysian labor surrogate value, 2) reconsider the corrective material submitted at Ningbo Master's verification, and 3) reconsider Ulix's separate rate status.  Slip Op. 21-30 (CIT March 23, 2021).  Commerce continues to find that it properly accepted minor corrections at Ningbo Master's verification, a finding that no party objects to now on remand and accordingly, this Court should uphold. *See* Plaintiff Remand Comments (September 20, 201) at 1-2. Commerce also continues to find that Ulix should be assigned a separate rate.  Defendant-Intervenors take no position on the separate rate status of  Ulix.  Defendant-Intervenors support Commerce's reliance on the Mexican labor rate as the best available information for surrogate direct, indirect, and packing labor; and also offer another Mexican labor source of record as alternative best available information.

After reconsidering the Malaysian labor rate, Commerce now finds

it is not the best available information to value the labor FOPs and instead relied upon a Mexican labor rate source.  While Defendant-Intervenors maintain it would still be appropriate to rely on the Malaysian labor rate, Defendant-Intervenors also support the reliance on the Mexican labor rates, in the alternative.   Plaintiff argues that it was an abuse of discretion for Commerce to consider the Mexican labor rate.  This argument misapprehends the posture of this issue during the review, appeal, and now on remand.  Commerce was legally obligated to consider the Mexican data but surely also had the discretion to do so. Thus, it is appropriate for the Court to uphold Commerce's remand results in this regard.

I.    COMMERCE'S USE OF THE MEXICAN LABOR RATE FOR THE LABOR SURROGATE VALUE IS NOT AN ABUSE OF DISCRETION AND IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff maintains that it was an abuse of discretion for Commerce to consider and then rely upon the Mexican ILC rate.  Pl. Rem. Cmts at 8 & 26-30.   Plaintiff claims that because no party advocated for the Mexican ILC labor rate prior to the remand, and because Commerce itself did not consider the Mexican ILC labor rate until remand, it was beyond the scope of consideration on remand.  *Id.*

at 26.   Such arguments fundamentally misunderstand the posture of this issue and how it changed upon Remand.

In the Preliminary and Final Determination, Commerce relied upon Malaysia as the primary surrogate country and relied upon the Malaysian labor surrogate value.   Defendant-Intervenors supported this determination and accordingly did not write a brief before the agency suggesting an alternative surrogate country or labor rate and likewise did not appeal the surrogate country selection or labor rate.   Indeed, Defendant-Intervenors were not aggrieved parties with respect to the labor rate and could not have appealed that issue.   *See* 28 U.S.C. § 2636 & 5 U.S.C. § 702, and discussion below.

Plaintiff appealed the Department's reliance on the Malaysian labor rate.   Defendant-Intervenors, along with the United States, defended the reliance on the Malaysian labor rate on appeal.   On remand, Commerce changed its position and *for the first time* determined that the Malaysian labor rate was not reliable.   Only at this time did the issue of the alternative labor rate become ripe.   *Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261, 1294-1295 (Dep't Comm. 2006) (discussing that because the agency "might, at

some point in the future," take an unlawful action does not "present this court with an issue ripe for judicial review".); *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08, (2003) (stating that the ripeness doctrine is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."); *Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1344 (Ct. Int'l Trade 2000) ("This issue is indeed not yet ripe for adjudication. There is no actual controversy between the parties, because Commerce did not set the cash deposit rate based in whole or in part upon the adjusted cost of manufacturing. The cash deposit rate imposed rests entirely on total adverse facts available. YUSCO has not been injured in any way by Commerce's decision to adjust the cost of manufacturing. Commerce did not rest its  facts available determination upon its conclusion that the cost of manufacturing required adjustment. A decision by this court in YUSCO's favor on this issue would result in no benefit whatsoever to YUSCO. If YUSCO were

4

to appeal on the issues of facts available and adverse facts available, and to prevail on both issues, such that Commerce were somehow wholly precluded from applying either provision, the case would be remanded to Commerce for calculation of the proper margin. Unless and until these events have come to pass, there is no controversy for this court to adjudicate."); *Torrington Co. v. United States*, 779 F. Supp. 1395, 1398 (Ct. Int'l Trade 1991) ("If the Court remands the FMV issue regarding use of third country data, and if after remand, the ITA issues a negative determination, Torrington could then raise these arguments, since such a determination "would be a reversal of its original decision and, therefore, would constitute a 'new determination' entitling" Torrington to contest it anew. *See Rose Bearings, Ltd. v. United States*, 751 F. Supp. 1545, 1547 (1990). At this time, however, Torrington's arguments are hypothetical, and any emanations from this Court on that issue would constitute an improper advisory opinion.")

Plaintiff is essentially arguing that Defendant-Intervenors were obligated to advocate for an alternative labor rate (Mexico) throughout the original investigation and appeal, despite Commerce relying on Defendant-Intervenors' preferred labor source already (Malaysia), in

order for the rate to be considered now on remand. This position is

absurd. Defendant-Intervenors were not aggrieved by Commerce's

reliance on the Malaysian labor rate and thus had no issue to appeal

with respect to the labor rate. Nor is it possible to appeal a hypothetical

situation. *See* 5 U.S.C. § 702 (a party that is "adversely affected or

aggrieved by agency action within the meaning of a relevant statute, is

entitled to judicial review thereof."); *Freeport Minerals Co. v. United*

*States*, 758 F.2d 629, 634 (Fed. Cir. 1985) ("As a general rule, the

prevailing party in a proceeding may not appeal the proceeding just

because he disagrees with some of the findings or reasoning. If this

were not so, appellate courts would be swamped with theoretical

disputes."); *Rose Bearings, Ltd. v. United States*, 14 C.I.T. 801, 802-803

(1990) ("Rose's not-so-rosy scenario, that the court may remand the case

and that the ITA may reverse its finding as to spherical plain bearings,

is precisely the type of situation which calls for an advisory opinion, and

the court is barred explicitly from issuing such a ruling... Rose would

not be barred from contesting a remand determination where the new

decision adversely affects it, and where Rose had no cause or right to

contest the original determination.") *citing McKechnie Bros. (N.Z.) Ltd.*

6

*v. United States Department of Commerce*, 735 F. Supp. 1066, 1068 (Ct. Int'l Trade 1990).

Commerce made a new determination on remand; Commerce determined it could not rely upon the Malaysian labor rate. The issue of which alternative labor rate to rely upon only became relevant at this time. Sound policy cautions against requiring second, third, and fourth alternative arguments being raised at each stage of argument before the agencies or the courts.

On remand, Commerce properly considered the *entire* record to determine which labor rate is the best available information. *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ("[S]ubstantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence."). This Court must uphold Commerce's consideration of all record labor rates, including the Mexican ILC source it ultimately determined to rely upon if a reasonable mind could conclude that it was the best available information for the surrogate labor rate on the entire record.

7

Commerce's decision to rely upon the Mexican ILC rate instead of the Brazilian ILC rate is supported by substantial evidence. The Department has a long-standing preference of relying upon surrogate values from a country that produces identical merchandise. *Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 4,852 (Dep't Comm. January 2017) at Comment 1 ("Departmental policy…indicates a preference to select a surrogate country that produces identical merchandise over one that only produces comparable merchandise."); *Changzhou Trina Solar Energy Co. v. United States*, 450 F. Supp. 3d 1301, 1315 (Ct. Int'l Trade 2020) ("Given Commerce's regulatory preference for information gathered from producers of identical or comparable merchandise in the surrogate country, *see* 19 C.F.R. § 351.408(c)(4), Commerce's determination is reasonable."). Mexico is a producer of identical merchandise, as evidenced by the fact that the petition itself was against China and Mexico. In contrast, there is no information on the record that Brazil produces identical merchandise. Indeed, petitioner only provided information that Brazil produces a supposedly comparable product,

8

steel wheels.  *See* Pet. SC Comments (December 10, 2018) P.R. 101,

Appx____.  Therefore, reliance on the Mexican ILC labor rate instead of

the Brazilian ILC labor rate was in accordance with Commerce's

normal, established preference to rely upon surrogate values from a

country that produces identical merchandise.

Lastly, Plaintiff attempts to undermine the reliance on the

Mexican ILC labor rate because Commerce inflated the rate using the

Brazilian CPI from the Petition.  However, this argument does not

render the Mexican labor rate any less reliable and certainly does not

undermine that only the Mexican labor rates are sourced from a

country that produces identical merchandise, and thus are preferable.

Commerce in its discretion determined that the Brazilian CPI was an

appropriate and reasonable inflator.  Commerce could also submit

Mexican CPI to the record for this purpose.  Commerce often provides

such conversion or inflation data to the record itself, for example, in this

review Commerce placed the Malaysian exchange rate on the record for

its use.  *See* Prelim. SV Memo (May 29, 2019) at Exhibit 2, P.R. 207-

209, Appx____; *see also Wooden Bedroom Furniture From the People's

Republic of China: Final Results and Final Rescission in Part*, 75 Fed.

9

Reg. 50,992 (August 18, 2010) and accompanying IDM at Comment 34 (discussing using labor data on the record and inflating it using CPI data placed on the record by the Department itself); *Seamless Refined Copper Pipe and Tube From the People's Republic of China: Preliminary Results of Administrative Review; 2014-2015*, 81 Fed. Reg. 95,110 (Dep't Comm. 2016) and accompanying Prelim. IDM at 24 (discussing where necessary, the Department adjusted a surrogate value with the Thai CPI that the Department placed on the record itself); *Refillable Stainless Steel Kegs From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 13,34 (April 5, 2019) and accompanying Prelim. IDM (placing interest rate benchmarks and loan benchmarks on the record in conjunction with the Preliminary Results).

Defendant-Intervenors also maintain that the Mexican INEGI labor rate is a reliable surrogate value for labor, superior to the Brazilian labor rate. As reliance on the Mexican ILC labor rate results in a zero margin, Defendant-Intervenors are not aggrieved by this determination. However, if the Court finds that reliance on the

Mexican ILC rate is not supported by substantial evidence, Defendant-Intervenors maintain that the Mexican INEGI labor rate can be relied upon in the alternative as the best available information of record.

The Department has a well-established preference for specific surrogate values. *See Taian Ziyang Food Co. v. United States*, 783 F. Supp. 2d 1292, 1330 (Ct. Int'l Trade 2011) ("[I]n sum, 'product specificity' logically must be the primary consideration in determining 'best available information.' If a set of data is not sufficiently 'product specific,' it is of no relevance whether or not the data satisfy the other criteria set forth in Policy Bulletin 04.1."); *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014) (surrogate value selection justified where Commerce treated product-specificity as "more important factor" than other criteria). The Department also prefers to rely upon surrogate values from a country that produces identical merchandise. The INEGI Mexican labor rate best fulfils all of these criteria. The INEGI Mexican labor rate is highly specific to "332420 Manufacture of thick gauge metal tanks." *See* Ningbo Master Final SVs (April 29, 2019) at Exhibit 6, P.R. 177-180, Appx____. In contrast, the ILC labor rates (Brazil or Mexico) is an overall

11

manufacturing labor rate that includes all manufacturing industries from agriculture to wood to computers.  The INEGI Mexican labor rate is also sourced from an official government agency, while the ILC does not provide information on the underlying source data.

The only supposed deficiency raised by Commerce with regard to the INEGI Mexican labor rate is that it was uncertain whether the data represents full labor costs.  However, this data is the exact same data relied upon by the Department in *Steel Propane Cylinders from China*. *See* Ningbo Master Final SVs at Exhibit 7 (Propane Cylinders SV Memo).  The Department found this data was reliable and highly specific and has no reason to find otherwise here.  Notably, the INEGI labor rate is actually <u>higher</u> than the ILC Mexican labor rate that the Department determined in the remand *does* definitely cover all labor costs.  The INEGI industry-specific Mexican labor rate is 87.95 pesos/hr, or 4.65 usd/hr, while the ILC Mexican labor rate is 3.91 usd/hr.  Therefore, this also supports a finding that the INEGI Mexican labor rate indeed covers all labor costs, or at least is a more reasonable source of the best available information to value this factor of production with all factors considered.  *See* 19 U.S.C. 1677b(c)(1).

In sum, Defendant-Intervenors support the Commerce determination to rely upon a Mexican labor rate instead of a Brazilian labor rate. This determination is in keeping with normal Commerce practice to prefer to rely upon surrogate values from a country producing identical merchandise. While Defendant-Intervenors do not contest the reliance on the ILC Mexican labor rate, Defendant-Interveners also maintain that the INEGI Mexican labor rate is an alternative most reliable source that is highly specific, covers all labor costs, and is also sourced from a country that produced identical merchandise.

## II.   CONCLUSION AND PRAYER FOR RELIEF

In light of the foregoing, we respectfully request that this Court deny Plaintiff's motion, sustain Commerce's Remand Redetermination, and enter judgment for the United States.

Respectfully submitted,

/s/ Gregory S. Menegaz
Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman*
DEKIEFFER & HORGAN, PLLC
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
Email:  gmenegaz@dhlaw.com

Date: November 18, 2020          *Counsel to Defendant-Intervenors.*


*\*Admitted to California Bar; practice supervised by attorneys of the firm who are active D.C. Bar members pursuant to D.C. Bar Rule 49(c)(8).*

14

## WORD COUNT CERTIFICATE OF COMPLIANCE

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Scheduling Order. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 2,457 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
DEKIEFFER & HORGAN, PLLC
Suite 410
1090 Vermont Ave., N.W.
Washington, D.C. 20005
*Counsel to Defendant-Intervenors*