**PUBLIC VERSION**

**Slip Op. 22-106**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

─────────────

**Court No. 20-00008**

─────────────

NEW AMERICAN KEG, d/b/a
AMERICAN KEG COMPANY,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

NINGBO MASTER INTERNATIONAL
TRADE CO., LTD., AND GUANGZHOU
JINGYE MACHINERY CO, LTD.,

*Defendant-Intervenors.*

─────────────

Before: M. Miller Baker, Judge

## OPINION

[Following remand, the court sustains Commerce's determination in part and remands in part.]

Dated: September 13, 2022

*Whitney M. Rolig*, *Andrew W. Kentz*, and *Nathaniel Maandig Rickard*, Picard Kentz & Rowe LLP of Washington, DC, on the briefs for Plaintiff.

**PUBLIC VERSION**

*Ashley Akers*, Trial Attorney, Commercial Litigation Branch, *Ethan P. Davis*, Acting Assistant Attorney General, *Jeanne P. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, Civil Division, U.S. Department of Justice of Washington, DC, on the brief for Defendant. Of counsel on the brief was *Vania Wang*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

*Gregory S. Menegaz*, *J. Kevin Horgan*, and *Alexandra H. Salzman*, deKieffer & Horgan, PLLC, of Washington, DC, on the brief for Defendant-Intervenors.

*Baker*, Judge: This case returns to the court after remand in *New American Keg v. United States*, Court No. 20-00008, Slip Op. 21-30, at 56, 2021 WL 1206153, at **21–22 (CIT Mar. 23, 2021).[1] The Court remanded for the Department of Commerce to re-evaluate (1) its use of Malaysian surrogate value data, (2) its verification of submissions by Ningbo Master, and (3) its grant of separate rate status to Guangzhou Ulix Industrial & Trading Co., Ltd. (Ulix). *Id.*

On remand, Commerce reconsidered the Malaysian data and found that due to forced labor concerns, the "Malaysian labor [surrogate value] is not the best available information on record." ECF 40-1, at 7. Choosing from the remaining surrogate values on record, the Department selected 2016 Mexican labor data

---

[1] The court presumes familiarity with its previous decision.

**PUBLIC VERSION**

from International Labor Comparisons inflated to the period of investigation. *Id.* at 7.

Commerce further reconsidered its verification of Ningbo Master's corrections. Upon reexamination, the Department found no discrepancies in the documentation Ningbo Master submitted and therefore deemed the company's revised factors of production verified and accepted the data.[2] ECF 40-1, at 9. Finally, Commerce reaffirmed its grant of separate rate status to Ulix. *Id.* at 12.

American Keg now challenges: (1) Commerce's use of a Brazilian consumer price index to inflate 2016 Mexican wage data, (2) its use of the Mexican wage data in its final determination, and (3) the Department's reaffirmation of Ulix's separate rate status. ECF 54, at 2.

I

American Keg brought this suit under 19 U.S.C. § 1516a(a)(2)(B)(i), which allows an interested party who was a party to an antidumping proceeding to contest Commerce's final determination. The Court has subject-matter jurisdiction over such actions pursuant to 28 U.S.C. § 1581(c).

---

[2] No party challenges the decision to accept Ningbo Master's corrections as verified. ECF 54, at 1–2; ECF 52, at 1. The court therefore finds that Commerce complied with the remand order by reconsidering its verification of these corrections and that the Department's determination is supported by substantial evidence.

**PUBLIC VERSION**

The standard of review of a remand determination is the same as that on previous review. *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (CIT 2002). In actions brought under 19 U.S.C. § 1516a(a)(2), "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the Court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

## II

### A

In the remand order, the court instructed Commerce to address record evidence describing the prevalence of forced labor in Malaysia and reconsider whether Malaysian surrogate labor data were the best

**PUBLIC VERSION**

available data. Slip Op. 21-30, at 28, 32, 35, 2021 WL 1206153, at **11, 12, 13–14.

Commerce did so and found that "the demonstrated forced labor from this record evidence outweighs our single country and contemporaneity rationale, and therefore we find the Malaysian labor [surrogate value] is not the best available information on the record." ECF 40-1, at 7.

In deciding between the two remaining surrogate values on the record, in its draft remand results the Department chose the 2016 Brazilian International Labor Comparisons' (ILC) data, Appx1006. In the final remand results, however, it chose the 2016 Mexican ILC data inflated with a Brazilian inflator because Mexico makes identical merchandise while Brazil only makes comparable merchandise. ECF 40-1, at 7, 13, 19.

American Keg argues that Commerce failed to "explain why [consumer price index] information specific to Brazil was a relevant or appropriate means of inflating a Mexican labor wage rate" or "why a Mexican labor wage rate inflated with a different country's CPI was superior to a Brazilian labor wage rate inflated with its own CPI." ECF 54, at 24–25. Although it claims that the chosen inflator does not have to be considered in determining which country's data are the best available information, the government acknowledges that the Department failed to explain why it used the Brazilian inflator on Mexican data and requests that, to the extent "that this explanation is

**PUBLIC VERSION**

relevant or necessary to Commerce's use of the Mexican ILC data," the court should grant "a voluntary remand for Commerce to explain whether and why the inflator used on the Mexican ILC was appropriate." ECF 51, at 21–22 (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)).

Commerce used an inflator specific to a different country, a suspect choice, and it then failed to explain that choice. That alone would justify remand in view of Commerce's published guidance stating that "[t]he Department inflates the selected earnings data to the year that covers the majority of the period of the proceeding using the *relevant* Consumer Price Index." *Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production: Labor*, 76 Fed. Reg. 36,092, 36,094 (Dep't Commerce June 21, 2011) (emphasis added). In other words, Commerce needs to explain how the Brazilian consumer price index is relevant to Mexican data.[3]

### B

American Keg argues at length that the Department abused its discretion in abruptly changing course between its preliminary and final determinations. In

---

[3] At argument, American Keg argued that the court should bar Commerce from reopening the administrative record on remand. The court requested that the parties address this question through supplemental briefing. As American Keg has not identified any authority for the court to so limit the Department's discretion, the court declines the company's request.

**PUBLIC VERSION**

the former, Commerce used Brazilian surrogate data suggested by American Keg in place of the compromised Malaysian data. In the latter, however, the Department instead used Mexican data. American Keg argues that it was surprised and that the Department's switch impedes both administrative and judicial efficiency.

Although the court can appreciate American Keg's frustration—it appears that the Department didn't give much thought to this switch in view of the necessity for another remand as discussed above—it can detect no abuse of discretion by Commerce. The Department was therefore within its rights to change its mind and use Mexican data instead of Brazilian data.

## C

The remand order found that "Commerce simply failed to address American Keg's evidence that the U.S. customer was affiliated with Ulix," which needed to be addressed because it fairly detracted from the Department's conclusion. Slip Op. 21-30, at 48–49, 2021 WL 1206153, at *19. The court remanded for Commerce to explain why it found American Keg's evidence regarding eligibility for a separate rate unconvincing. *Id.* at 49, 2021 WL 1206153, at *19.

On remand, Commerce analyzed American Keg's rebuttal information, finding that the record established that the U.S. customer and a third company, "Company A," are affiliated with each other and that yet another company, "Company B," may be affiliated

**PUBLIC VERSION**

with both. ECF 40-1, at 12. The Department found, however, that "[n]one of this information, nor any other information on the record of this investigation, indicates that there is any ownership or familial connection between the owners of Guangzhou Ulix . . . and the owners of" the customer and the other companies. *Id.* Therefore, Commerce continued to find that "Guangzhou Ulix is eligible for a separate rate." *Id.* American Keg challenges this determination as unsupported by substantial evidence. ECF 54, at 31–32.

It is the responsibility of separate rate applicants to rebut the presumption that they are "government controlled and therefore subject to the country-wide rate." *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1353 (Fed. Cir. 2015). Here, Commerce's determination that Ulix had met this burden is unsupported by substantial evidence.

Because the Department found that the U.S. customer and Company A are affiliated, there needs to be affirmative evidence on the record that the latter is unaffiliated with Ulix. There is no such evidence.

Commerce relied on these two statements: [[




]] ECF 39-1, at 11. These statements refer to past actions by individuals, not present affiliations, and they don't even deny an affiliation between Ulix and Company A. Without even a bare denial, there is no evidence on the

**PUBLIC VERSION**

record from which Commerce could conclude that the companies were not affiliated. Hence, Ulix has not carried its burden to show a lack of affiliation. The Department's separate rate determination therefore remains unsupported by substantial evidence.

\* \* \*

For the reasons stated above, the court remands to Commerce to (1) explain why it was appropriate to inflate a Mexican labor wage rate using Brazilian data and why doing so was superior to using a Brazilian labor wage rate; and (2) identify the evidence in the administrative record that supports granting Ulix a separate rate. A separate remand order will issue.

Dated: September 13, 2022    /s/ *M. Miller Baker*
        New York, NY          Judge