UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| NEW AMERICAN KEG, d/b/a AMERICAN KEG COMPANY,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>UNITED STATES<br>　　　　　Defendant,<br><br>　　and<br><br>NINGBO MASTER INTERNATIONAL TRADE CO., LTD., GUANGZHOU JINGYE MACHINERY CO., LTD.,<br><br>　　　　Defendant-Intervenors | Ct No. 20-00008 |

DEFENDANT-INTERVENORS' REMAND COMMENTS

Gregory S. Menegaz
Alexandra H. Salzman
DEKIEFFER & HORGAN, PLLC
Suite 1101
1156 15th Street, N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Defendant-Intervenors*

Date: April 17, 2023

## TABLE OF CONTENTS

I.   COMMERCE'S DETERMINATION TO OPEN THE RECORD TO SUBMIT AND RELY UPON THE ILO MEXICAN LABOR RATE WAS LAWFUL ................................................................................................ 2

II.  CONCLUSION AND PRAYER FOR RELIEF............................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Changzhou Trina Solar Energy Co. v. United States*, 450 F. Supp. 3d 1301 (Ct. Int'l Trade 2020) ............................................................... 3

*Consolo v. Federal Maritime Comm'n*, 383 U.S. 607 (1966) ..................... 7

*Fresh Garlic Producers Ass'n v. United States*, 2017 Ct. Intl. Trade LEXIS 128 ....................................................................................................... 5-6

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ............................................................................................. 7

*INS v. Elias-Zacarias*, 502 U.S. 478 (1992) ............................................ 7-8

*Risen Energy Co., Ltd. v. United States*, 2022 Ct. Intl. Trade LEXIS 159 ............................................................................................................. 6

*SeAH Steel VINA Corp. v. United States*, 269 F. Supp. 3d 1335, 1358 (Ct. Int'l Trade 2017) ...................................................................... 4

*Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330 (Ct. Int'l Trade 2005) ...................... 5

*Shenzhen Xinboda Indus. Co. v. United States*, 361 F. Supp. 3d 1337 (Ct. Int'l Trade 2019) ...................................................................... 5

*Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159 (Ct. Int'l Trade 2017) .......................................................................................... 4-5

*NSK Corp. v. United States*, 774 F. Supp. 2d 129 (Ct. Int'l Trade 2011) ............................................................................................................. 4

*Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343 (Ct. Int'l Trade 2013) ...................................................................... 4

## ADMINISTRATIVE DECISIONS

*Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 4,852 (Dep't Comm. January 2017) ........................................... 3

*Seamless Refined Copper Pipe and Tube From the People's Republic of China: Preliminary Results of Administrative Review; 2014-2015*, 81 Fed. Reg. 95,110 (Dep't Comm. 2016) ............................................... 6-7

*Wooden Bedroom Furniture From the People's Republic of China: Final Results and Final Rescission in Part*, 75 Fed. Reg. 50,992 (August 18, 2010) ................................................................................. 6-7

# GLOSSARY

CPI ......................................................................... Consumer Price Index

ILC ................... International Labor Comparisons, the Conference Board

ILO ...................................................... International Labor Organization

Defendant-Intervenors Ningbo Master International Trade Co., Ltd. ("Ningbo Master") and Guangzhou Jingye Machinery Co., Ltd. ("Jingye") respectfully file comments on Commerce's remand redetermination. The Court remanded two issues to Commerce: 1) explain whether it was appropriate to use the Brazilian CPI index to inflate the Mexican labor rate and why this was superior to relying on the Brazilian labor rate and 2) identify the evidence that supports granting Ulix separate rate status. Slip Op. 22-106 (CIT September 13, 2022). Commerce continues to find that Ulix should be assigned a separate rate and supports its position with record information. Defendant-Intervenors take no position on the separate rate status of Ulix. Defendant-Intervenors support Commerce's reliance on a Mexican labor rate as the best available information.

After reconsidering the best available information to value labor, Commerce determined to reopen the record and place the contemporaneous ILO Mexican labor rate on the record. The ILO labor source is one of Commerce's preferred labor sources. Second Remand at 3. The ILO Mexican labor rate is contemporaneous and sourced from Mexico, a significant producer of identical merchandise, and accordingly

1

Commerce properly found the rate was the best available information to value labor.

Plaintiff argues that it was unlawful for Commerce to reopen the record and place the Mexican ILO data on the record. While Defendant-Intervenors also maintain it was appropriate to rely upon the Mexican ILC source[1], Defendant-Intervenors also submit that it was entirely within the lawful discretion of Commerce to reopen the record and submit and rely upon the ILO data. Thus, it is appropriate for the Court to uphold Commerce's remand results.

I. COMMERCE'S DETERMINATION TO OPEN THE RECORD TO SUBMIT AND RELY UPON THE ILO MEXICAN LABOR RATE WAS LAWFUL.

Commerce followed the Court's Order and upon further consideration determined it was not appropriate to use the Brazil CPI data to inflate the Mexican labor rate. Commerce also followed the Court's instructions and considered whether it was still superior to rely upon a Mexican labor rate instead of the Brazilian labor rate. Commerce found relying on a Mexican labor rate was still superior than

---

[1] *See* Defendant-Intervenor Remand Comments (December 9, 2021); ECF 52 (comments in support of Commerce's first remand relying on the ILC Mexican labor rate).

relying on Brazil, because Mexico is a producer of identical merchandise. Remand Results at 3-4. *Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 4,852 (Dep't Comm. January 2017) at Comment 1 ("Departmental policy…indicates a preference to select a surrogate country that produces identical merchandise over one that only produces comparable merchandise."); *Changzhou Trina Solar Energy Co. v. United States*, 450 F. Supp. 3d 1301, 1315 (Ct. Int'l Trade 2020) ("Given Commerce's regulatory preference for information gathered from producers of identical or comparable merchandise in the surrogate country, *see* 19 C.F.R. § 351.408(c)(4), Commerce's determination is reasonable.").

Accordingly, Commerce determined to reopen the record in order to rely on a contemporaneous Mexican labor rate as the best available information. Plaintiff argues this was unlawful essentially because the Mexican ILO labor rate was not required to calculate a margin. However, the reopening of the record is not restricted to only circumstances where strictly necessary—i.e. when there is no other reasonable alternative, like Plaintiff suggests. As already briefed before

3

this Court, Commerce has been given wide discretion to determine whether to reopen the record on remand. *See* Def-Int Supplemental Brief (May 2, 2022); ECF 65; *see also Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343 (Ct. Int'l Trade 2013) (It is a well-established "general principle that the decision of whether or not to reopen the record upon remand is a matter for an agency to decide."); *NSK Corp. v. United States*, 774 F. Supp. 2d 1296, 1298 n.4 (Ct. Int'l Trade 2011) (noting that agencies have "inherent discretion to reopen the record" with respect to issues remanded for reconsideration).

This discretion extends to placing surrogate value information on the record, with no restriction that such surrogate values can only be submitted to the record if strictly necessary. *SeAH Steel VINA Corp. v. United States*, 269 F. Supp. 3d 1335, 1358 (Ct. Int'l Trade 2017) (internal citation omitted) (leaving it to Commerce's discretion whether to reopen the record to supplement a surrogate value for inland insurance "consistent with the principle that courts, as a general matter, should allow agencies to exercise discretion as to whether to reopen an administrative record on remand."); *Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159, 1195 (Ct. Int'l Trade 2017)

4

("Nevertheless, on remand, Commerce may decide whether to reopen and supplement the record" to address surrogate value issues on remand.). *Shenzhen Xinboda Indus. Co. v. United States*, 361 F. Supp. 3d 1337, 1353-1359 (Ct. Int'l Trade 2019) (Discussing throughout that Commerce "obviously" could have reopened the record for additional surrogate value information on remand); *Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330, 1339 (Ct. Int'l Trade 2005) (Noting that Commerce has the ability to reopen the record and collect information on valuing a particular FOP even though parties had the opportunity during the review to submit such information).

  Indeed, Commerce has been upheld on remand exercising this discretion to place surrogate values on the record itself and in allowing other parties to submit surrogate values to the record. For example, in *Fresh Garlic Producers*, Commerce reopened the record for parties to submit entirely new full surrogate value record from new surrogate countries despite the record already containing usable information from surrogate countries. *Fresh Garlic Producers Ass'n v. United States*, 2017 Ct. Intl. Trade LEXIS 128, *11-12 (upholding Commerce's decision

5

to reopen the record and rely on a newly submitted surrogate country). In *Risen Energy*, Commerce reopened the record and placed an alternative surrogate value for silver paste on the record, despite the record already containing alternative usable silver paste surrogate values. *Risen Energy Co., Ltd. v. United States*, 2022 Ct. Intl. Trade LEXIS 159, *9-10 (upholding Commerce's reliance on the new surrogate value it placed upon the record on remand). Plaintiff fails to cite to any actual case where the Court found it was unlawful for Commerce to reopen the record and place surrogate value information on the record.

     Commerce found, given the CPI issue remanded, that it was most accurate to reopen the record and place the contemporaneous ILO Mexican labor rate on the record because it was more accurate to rely upon a labor rate from its preferred ILO data, that was contemporaneous, and from Mexico, a country that is an identical producer. While Commerce could have determined it was accurate to still rely on a less contemporaneous Mexico ILC labor rate or open the record to place the Mexican CPI data on the record[2], Commerce

---

[2] Commerce often provides such conversion or inflation data to the record itself. *See e.g. Wooden Bedroom Furniture From the People's Republic of*

6

determined in its expertise, it was most accurate to place the contemporaneous ILO Mexican labor rate on the record. Plaintiff may have wished Commerce made a different decision, but Commerce's decision is supported by substantial evidence. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966) (The fact that the Court may draw two inconsistent conclusions from the record "does not prevent an administrative agency's finding from being supported by substantial evidence."); *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) ("{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.") (citations and internal quotation marks omitted); *INS v. Elias-*

---

*China: Final Results and Final Rescission in Part*, 75 Fed. Reg. 50,992 (August 18, 2010) and accompanying IDM at Comment 34 (discussing using labor data on the record and inflating it using CPI data placed on the record by Commerce itself); *Seamless Refined Copper Pipe and Tube From the People's Republic of China: Preliminary Results of Administrative Review; 2014-2015*, 81 Fed. Reg. 95,110 (Dep't Comm. 2016) and accompanying Prelim. IDM at 24 (discussing where necessary, Commerce adjusted a surrogate value with the Thai CPI that Commerce placed on the record itself).

*Zacarias*, 502 U.S. 478, 483-84 (1992) (This Court will set aside the agency's conclusions only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion.).

In sum, Defendant-Intervenors support Commerce's determination to rely upon a Mexican labor rate instead of a Brazilian labor rate. This determination is in keeping with normal Commerce practice to prefer to rely upon surrogate values from a country producing identical merchandise. Commerce acted within its well-established discretion to open the record and place surrogate value data on the record to address the contemporaneity concerns with the labor data on the record.

## II.  CONCLUSION AND PRAYER FOR RELIEF

In light of the foregoing, we respectfully request that this Court deny Plaintiff's motion, sustain Commerce's Remand Redetermination, and enter judgment for the United States.

Respectfully submitted,

/s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
DEKIEFFER & HORGAN, PLLC
Suite 1101
1156 Fifteenth Street N.W.  20005
Tel: (202) 783-6900
Email:  gmenegaz@dhlaw.com

Date: April 17, 2023       *Counsel to Defendant-Intervenors.*

## WORD COUNT CERTIFICATE OF COMPLIANCE

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Scheduling Order. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 1,524 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.
Washington, D.C. 20005
*Counsel to Defendant-Intervenors*