A-570-093<br>
Remand: Slip Op. 24-11<br>
**Public Document**<br>
E&C/OI: DV

**Final Results of Redetermination Pursuant to Court Remand**
**Refillable Stainless Steel Kegs from the People's Republic of China**
*New American Keg v. United States*,
**Court No. 20-00008, Slip Op. 24-11 (CIT January 31, 2023)**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand opinion of the U.S. Court of International Trade (CIT or the Court) in *New American Keg v. United States*, Court No. 20-00008, Slip Op. 24-11 (CIT January 31, 2024) (*Remand Opinion*) and accompanying remand order.  These final results of redetermination concern *Refillable Stainless Steel Kegs from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 84 FR 57010 (October 24, 2019) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM), the *Final Results of Redetermination Pursuant to Court Remand, New American Keg v. United States*, Court No. 20-00008, Slip Op. 21-30 (CIT March 23, 2021), dated July 7, 2021 (*First Redetermination*),[1] and *Final Results of Redetermination Pursuant to Court Remand, New American Keg v. United States*, Court No. 20-00008, Slip Op. 22-106 (CIT September 13, 2022), dated November 10, 2022 (*Second Redetermination*).[2]

---

[1] The *First Redetermination* is on the record of this remand proceeding and also available on Commerce's website at https://access.trade.gov/resources/remands/21-30.pdf.
[2] The *Second Redetermination* is on the record of this remand proceeding and also available on Commerce's website at https://access.trade.gov/resources/remands/22-106.pdf.

In the *Remand Opinion*, the Court remanded the *Second Redetermination* to Commerce because the Court held that Commerce abused its discretion by placing new Mexican labor surrogate value data on the record to calculate the dumping margin for Ningbo Master International Trade Co., Ltd. (Ningbo Master) in the *Second Redetermination*.[3]

## II.   BACKGROUND

In the *Final Determination*, Commerce used Malaysian surrogate data to value Ningbo Master's labor factors of production (FOP).[4] The Court remanded the *Final Determination* and ordered Commerce to reconsider, *inter alia*, its selection of the Malaysian surrogate labor data over the Brazilian surrogate labor data.[5] In the *First Redetermination*, Commerce determined that "Malaysian data does not constitute the best available information for valuing Ningbo Master's labor FOPs because it is linked to forced labor."[6] Commerce further determined that "based on the information on the record, {it}selected the Mexican labor {surrogate value (SV)} from {Conference Board's International Labor Comparisons (ILC)} as the best information available to value Ningbo Master's labor FOPs" and "inflated the Mexican labor SV from ILC to the {period of investigation (POI) using Brazilian inflator} and recalculated Ningbo Master's margin."[7] The Court remanded the *First Redetermination* and ordered Commerce to justify the use of the Mexican surrogate labor data inflated with Brazilian consumer price index (CPI) when the Brazilian surrogate labor data are available on the record.[8] In the *Second Redetermination*, after filing the *First Redetermination* and requesting a voluntary remand, Commerce acknowledge that it was improper to inflate the Mexican labor wage rate from the ILC using

---

[3] *See Remand Opinion* at 5-6.
[4] *See Final Determination* IDM at Comments 1 and 11.
[5] *See New American Keg v. United States*, Court No. 20-00008, Slip Op. 21-30 (CIT March 23, 2021).
[6] *See First Redetermination* at 17.
[7] *Id*. at 19.
[8] *See New American Keg v. United States*, Court No. 20-00008, Slip Op. 22-106 (CIT September 13, 2022).

Brazilian CPI.[9]  Notwithstanding, Commerce continued to determine that the Mexican labor wage data are superior to the Brazilian labor wage data and, in order to achieve an accurate calculation, Commerce re-opened the record and placed on the record data from the International Labour Organization (ILO).[10]  Consequently, in the *Second Redetermination*, Commerce used the Mexican wage rate from the ILO data for 2018 (contemporaneous with the POI) and recalculated Ningbo Master's margin accordingly.[11]  In the *Remand Opinion*, the Court indicated that Commerce abused its discretion in reopening the record to use Mexican ILO wage data, because Commerce made no showing that the Brazilian wage information on the record was inaccurate or otherwise unsuitable for the calculation of Ningbo Master's margin.[12]

On February 21, 2024, we released the Draft Results to interested parties for comment.[13] On March 4, 2024, we received comments from American Keg Company (petitioner)[14] and Ningbo Master.[15]

## III.  ANALYSIS

In the *Second Redetermination*, we re-opened the record, placed on the record and used the Mexican ILO data to enhance the accuracy of the calculated margin for Ningbo Master.[16]  In its ruling, the Court ruled that Commerce's "reopening the record because of a purported need for accurate data is not supported by substantial evidence."[17]  Specifically, the Court ruled that

---

[9] *See Second Redetermination* at 3.
[10] *Id*.
[11] *Id*. at 4.
[12] *See Remand Opinion* at 5-6.
[13] *See* Draft Results of Redetermination Pursuant to Court Remand, *New American Keg v. United States*, Court No. 20-00008, Slip Op. 24-11 (CIT January 31, 2024), dated February 21, 2024 (Draft Results).
[14] *See* Petitioner's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated March 4, 2024 (Petitioner's Comments).
[15] *See* Ningbo Master's Letter, "Remand Proceeding - Comments on Draft Remand Results," dated March 4, 2024 (Ningbo Master's Comments).
[16] *See Second Redetermination*.  Throughout the *Second Redetermination*, we explained the need to place on the record new surrogate labor data to enhance the accuracy of the margin calculation for Ningbo Master.
[17] *See Remand Opinion* at 4.

"{i}insofar as the Department reopened the record because of its preference for data from countries that produce identical, as opposed to merely comparable, goods, that reopening was arbitrary and capricious for two related reasons."[18] First, the Court ruled, "…Commerce uses figures from countries that produce comparable products when there are 'data difficulties' with countries that produce identical products,"[19] finding that on the instant record "…there were data difficulties with the Mexican ILC wage data because it lacked an inflation adjustor, but there was no such difficulty with the Brazilian information."[20] The Court ruled that the Brazilian surrogate labor data are already accurate and there has been no dispute over its accuracy in the litigation.[21] Second, the Court ruled that Commerce does not "reopen the record to admit evidence that it prefers, such as ILO data, when the parties have introduced otherwise-acceptable evidence that allows an accurate margin calculation."[22]

      Considering the Court's ruling, Commerce finds no definitive information on the record showing that the Brazilian wage information is inaccurate or otherwise unsuitable for the calculation of Ningbo Master's margin. In addition, we can inflate the Brazilian surrogate labor data with the Brazilian CPI to satisfy the contemporaneity requirement in valuing labor, whereas we are not able to do so using the Mexican ILC data. Accordingly, we used the Brazilian labor SV from 2016, inflated to the POI, and recalculated Ningbo Master's margin for these final results of redetermination.[23] Moreover, because the margin for separate rate applicants is based

---

[18] *Id*.

[19] *Id*. (citing Import Administration Policy Bulletin 04.1, "Non-Market Economy Surrogate Country Selection Process," dated March 1, 2004 (NME Surrogate Country Policy Bulletin), at 2 n.6).

[20] *Id*.

[21] *Id*. ("To begin with, 'a Commerce determination . . . is 'accurate' if it is correct as a mathematical and factual matter . . . .' *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016). It's undisputed that the Brazilian information on the record was correct as a factual matter—indeed, the Department so found in its draft redetermination results.").

[22] *Id*. at 5.

[23] *See* Draft Results of Remand Redetermination, *New American Keg v. United States*, Consolidated Court No. 20-00008, Slip Op. 21-30, dated May 12, 2021 (where identical calculations were first implemented).

on the margin calculated for Ningbo Master, we revised the margin for the separate rate applicants using Ningbo Master's recalculated margin.

## IV. INTERESTED PARTY COMMENTS

*Petitioner's Comments*

The following is a verbatim summary of arguments submitted by the petitioner.  For further details, *see* Petitioner's Comments at 2-4 (internal citations omitted).

> {Commerce} should continue to use labor wage rate data for Brazil published by the {ILC} to value labor in its final {results of redetermination} because those data represent the best information available on the record. The Brazilian data satisfy {Commerce's} requirements with respect to surrogate values and are accurate and reliable.  Furthermore, the Brazilian data are superior to all other data sources placed on the record during the investigation.  Finally, reliance on the Brazilian data is consistent with the CIT's {*Remand Opinion*}.

*Ningbo Master's Comments*

The following is a verbatim summary of arguments submitted by Ningbo Master.  For further details, *see* Ningbo Master's Comments at 1-11.

- {Commerce should place} the Mexican CPI {data} on the {record and rely} on the Mexican {labor} rate:  {Commerce} has a well-established Court upheld discretion to open the record, including to add surrogate values.  {Commerce} also has a regular practice of placing CPI data on the record itself in almost every review and investigation. Placing the Mexican CPI data on the record is reasonable and supported by regular {Commerce} practice.  This is all the more justified because Mexico produces identical merchandise.  {Commerce} has a practice to rely on surrogate values from producers of identical merchandise, finding it better approximates the costs of an actual producer and thereby fulfills its obligation to rely upon the best available information and calculate accurate margins.  This is only achieved by relying on the Mexican labor rate.

- Alternatively, {Commerce should rely} on the Mexican {labor rate} {either} with {no inflation} or {with} the Brazil CPI {inflation}:  Given {Commerce's} policy that surrogate values sourced from a country that produces identical merchandise is preferable and results in a more accurate margin, even relying on the Mexican labor rate without the Mexican CPI adjustment is superior to the Brazil labor rate.  {Commerce} can rely on the Mexican labor rate without adjusting for inflation, {Commerce} has relied on less contemporaneous surrogate values in the past when it found it still constituted the best available information.  {Commerce} can also rely on the Mexican labor rate and adjust

with the Brazil CPI.  The CPI adjustment is minimal, and the Brazil CPI is a reasonable alternative as Brazil is economically comparable to Mexico and is in the same region.

**Commerce's Position:**  For these final results of redetermination, Commerce used the Brazilian labor SV from 2016, inflated to the POI, and recalculated Ningbo Master's margin accordingly. Based on the information on the record, outside our general preference for a primary surrogate country that produces identical subject merchandise over comparable subject merchandise, we find that the Brazilian labor SV and the Mexican labor SV are otherwise equally reliable. However, although both the Brazilian labor SV and the Mexican labor SV are the 2016 data, we are able to inflate the Brazilian labor SV with the Brazilian inflator to make it contemporaneous with the POI, whereas we are unable to do so for the Mexican labor SV.[24]  Although we have a general preference for selecting a primary surrogate country that produces identical subject merchandise over comparable subject merchandise, according to the facts of this case that preference does not outweigh the ability to inflate non-contemporaneous data to make it contemporaneous with the POI.  As the CIT has explained, "Commerce uses figures from countries that produce comparable products when there are 'data difficulties' with countries that produce identical products."[25]  Therefore, we used the Brazilian labor SV and inflated it to make it contemporaneous with the POI.[26]  When necessary, it is our practice to inflate a non-contemporaneous SV to make it contemporaneous with the POI or, in an administrative review,

---

[24] *See* Petitioner's Letter, "Petitions for the Imposition of Antidumping Duties on Imports of Refillable Stainless Steel Kegs from Germany, Mexico, and the People's Republic of China and Countervailing Duties on Imports of Refillable Stainless Steel Kegs from the People's Republic of China," dated September 20, 2018 (Petition), Volume II, at Exhibits PRC-AD-8 and PRC-AD-11.
[25] *See* Remand Opinion at 4 (citing NME Surrogate Country Policy Bulletin at 2 n.6).
[26] *See* Antidumping Duty Investigation Initiation Checklists:  Refillable Stainless Steel Kegs from the People's Republic of China, dated October 10, 2018 (Initiation Checklist), at 9 ("The petitioner relied on data from the Conference Board's International Labor Comparisons and provided the hourly wage in U.S. dollars for workers in the manufacturing sector in Brazil for 2016, the latest year for which information was available, and *inflated the value for the POI* (emphasis added).")

the period of review (POR).[27]  The Court has recognized Commerce's practice of inflating non-contemporaneous data to make them contemporaneous with the POI or the POR.[28]

Because we have a reliable Brazilian labor SV that can satisfy the contemporaneity requirement using the Brazilian CPI for an inflation adjustment, we do not find it necessary to re-open the record to place the Mexican CPI on the record to inflate the Mexican labor SV.  At the beginning stage of the underlying investigation, we provided interested parties with two opportunities to submit SV information on the record to value factors.[29]  Ningbo Master did use these two opportunities to submit SV information, including a separate Mexican labor SV, which we declined to use,[30] but it did not submit a Mexican CPI.[31]  For purposes of valuing factors in an antidumping duty proceeding, it is the parties' obligation to create an agency record.[32]

---

[27] *See*, *e.g.*, *Certain Steel Nails from the People's Republic of China:  Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2021-2022*, 88 FR 58242 (August 25, 2023), and accompanying Preliminary Decision Memorandum (PDM) at 20 ("Commerce inflated this rate to make it contemporaneous with the POR"), unchanged in *Certain Steel Nails from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Determination of No Shipments; 2021-2022*, 89 FR 14630 (February 28, 2024); *Certain Activated Carbon from the People's Republic of China:  Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments; 2021-2022*, 88 FR 29632 (May 8, 2023), and accompanying PDM at 23 ("Commerce inflated this rate to make it contemporaneous with the POR.") unchanged in *Certain Activated Carbon from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review; and Final Determination of No Shipments; 2021-2022*, 88 FR 77553 (November 13, 2023); *Final Determination of Sales at Less Than Fair Value and Final Partial Affirmative Determination of Critical Circumstances: Diamond Sawblades and Parts Thereof from the People's Republic of China*, 71 FR 29303 (May 22, 2006), and accompanying IDM at Comment 11.B ("Moreover, we have inflated this value to be contemporaneous with the POI."); and *Notice of Final Determination of Sales at Less Than Fair Value: Steel Concrete Reinforcing Bars From the People's Republic of China*, 66 FR 33522 (June 22, 2001), and accompanying IDM at Comment 5 ("Given the fact that the pricing data obtained from the Monthly Statistics of Foreign Trade of India are … adjusted for inflation to ensure contemporaneity with the POI, … we have continued to use this source of information to value the factor for scrap.").
[28] *See*, *e.g.*, *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 255 F. Supp. 3d 1312, 1323 (CIT 2017) ("Although Commerce has in past proceedings *used price inflators to adjust data to be contemporaneous with the POR*, the government correctly states that Commerce does so only when there is not contemporaneous data on the record, …. (emphasis added)").
[29] *See* Commerce's Letter, "Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information," dated October 30, 2018, at 2.
[30] *See Final Determination* IDM at Comment 1.
[31] *See* Ningbo Master's Letters, "Preliminary Surrogate Value Submission," dated February 19, 2019, and "Final Surrogate Value Submission," dated April 29, 2019.
[32] *See Fine Furniture (Shanghai) Limited v. United States*, 353 F. Supp. 3d 1323, 1348 (CIT 2018) (internal citations omitted).

Although Commerce has discretion to place new factual information on the record itself, it is not a requirement.[33] The CIT held that Commerce's re-opening of record to satisfy "its preference for data from countries that produce identical, as opposed to merely comparable, goods…was arbitrary and capricious," because "Commerce uses figures from countries that produce comparable products when there are 'data difficulties' with countries that produce identical products."[34] The CIT, reasoning that the burden of creating an adequate record lies with interested parties and not with Commerce, found that, on the record created by the parties, there was not a data difficulty with the Brazilian information, holding that Commerce does not "reopen the record to admit evidence that it prefers…when the parties have introduced otherwise-acceptable evidence that allows an accurate margin calculation."[35] Thus, in the CIT's view, albeit a "showing that the Brazilian wage information on the record was inaccurate or otherwise unsuitable for calculation of Ningbo Master's margin," the use of such data allows an accurate margin calculation.[36]

As explained above, Commerce found that there is no definitive information showing that the Brazilian wage information on the record is inaccurate or otherwise unsuitable for the calculation of Ningbo Master's margin. Outside of Ningbo Master's argument that a SV for labor must be based on a surrogate country that is an identical producer of subject merchandise, an argument the CIT dismissed in the *Remand Opinion*, and absent any showing of inaccuracy or unsuitability, the accuracy of the Brazilian labor SV in the margin calculation for Ningbo Master

---

[33] *See* 19 CFR 351.301(c)(4) ("The Department *may* place factual information on the record of the proceeding at any time (emphasis added).").
[34] *See* Remand Opinion at 4 (citing NME Surrogate Country Policy Bulletin at 2 n.6).
[35] *Id.* at 4-5 (emphasis added).
[36] *Id.* at 5-6.

8

is not in question. As the CIT explained, "a Commerce determination . . . is 'accurate' if it is correct as a mathematical and factual matter . . ."[37]

Ningbo Master also argues that the Brazilian labor SV is flawed because the Brazilian labor wage rate from the ILC is denominated in U.S. dollars, while Brazilian CPI are denominated in Brazilian real.[38] Ningbo Master argues that using Brazilian SV introduces an additional inaccuracy, justifying a reason for Commerce to re-open the record for the Mexican CPI index, so that Commerce can fulfill its obligation to calculate a margin as accurately as possible.[39] Ningbo Master argues further that, even if Commerce determines not to re-open the record, it should still rely upon the Mexican labor rate. According to Ningbo Master, relying on the Mexican labor rate either with the Brazil CPI index, or with no inflation adjustment at all, remains the best available information, underscored by the very small impact of the CPI adjustment on the final SV.[40]

However, Commerce has previously stated, "we have reviewed our inflation methodology and find that U.S. dollar-denominated surrogate values should be inflated based on the country in which the expense was incurred, not the currency in which it was reported."[41] Further, Commerce has no practice of adjusting the underlying data from one alternative surrogate country using another alternative surrogate country's CPI data. In fact, the CIT questioned the appropriateness of inflating a Mexican labor wage rate using Brazilian CPI data and sought an explanation for why doing so was superior to using the Brazilian labor wage

---

[37] *Id.* at 4 (quoting *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016)).
[38] *See* Ningbo Master's Comments at 9.
[39] *Id.* at 9-10.
[40] *Id.* at 10-11.
[41] *See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review, 2012-2013*, 79 FR 57047 (September 24, 2014), and accompanying IDM at Comment 4.

rate.[42]  In the *Second Redetermination*, Commerce found, "{a}fter reexamining the issue, we acknowledge that it was improper to inflate the Mexican labor wage rate from the ILC using Brazilian {CPI} data."[43]  As such, given the absence of Mexican CPI data on the record, the result of using the Brazilian wage rate data is still preferable to the use of the Mexican wage rate data adjusted with the Brazilian CPI index.[44]  Contrary to Ningbo Master's assertion, even though both Mexico and Brazil are economically comparable countries in terms of the gross national product per capita, and are even domiciled in the same region,[45] these facts are not dispositive that the rate of inflation experienced by each country is the same.  Accordingly, Commerce is faced with the choice of either using the non-contemporaneous Mexican data (given the absence of Mexican CPI data on the record) or non-contemporaneous Brazilian data that can be made contemporaneous with an inflation adjustment to the POI.  As the CIT stated, "there were data difficulties with the Mexican ILC wage data because it lacked an inflation adjustor, but there was no such difficulty with the Brazilian information."[46]  Accordingly, Commerce finds that use of the Brazilian labor SV from 2016, inflated to the POI using the Brazilian CPI index, is appropriate in these final results of redetermination.

V.     **FINAL RESULTS OF REDETERMINATION**

In accordance with the Court's *Remand Opinion*, Commerce has, as discussed above, revised certain aspects of its dumping analysis.  Based on these changes, Commerce determines that the following weighted-average dumping margins exist:

---

[42] *See New American Keg v. United States*, Court No. 20-00008, Slip Op. 22-106 (CIT September 13, 2022).
[43] *See Second Redetermination* at 3.
[44] Moreover, for purposes of initiating the underlying investigation, we used the same Brazilian labor SV and Brazilian CPI and the same methodology to value labor.  *See* Initiation Checklists at 9; *see also* Petition at Volume II, Exhibits PRC-AD-8 and PRC-AD-11.
[45] *See* Ningbo Master's Comments at 11.
[46] See Remand Opinion at 4.

| Exporter | Producer | Estimated Weighted-Average Dumping Margin (percent *ad valorem*) | Cash Deposit Rate (Adjusted for Subsidy Offsets) (percent *ad valorem*) |
|---|---|---|---|
| Ningbo Master International Trade Co., Ltd. | Ningbo Major Draft Beer Equipment Co., Ltd. | 4.23 | 3.96[47] |
| Guangzhou Jingye Machinery Co., Ltd. | Guangzhou Jingye Machinery Co., Ltd. | 4.23 | 3.96 |
| Guangzhou Ulix Industrial & Trading Co., Ltd. | Guangzhou Jingye Machinery Co., Ltd. | 4.23 | 3.96 |

Should the Court affirm these final results of redetermination, Commerce intends to publish a notice of amended final determination and amended antidumping duty order in the *Federal Register* and issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

3/25/2024

X _Elouaradia_

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance

---

[47] *See Refillable Stainless Steel Kegs from the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, in Part*, 84 FR 57005 (October 24, 2019), and accompanying IDM at 5.