# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE**

_____  )
                                            )
NEW AMERICAN KEG, d/b/a                      )
AMERICAN KEG COMPANY,                        )
                                            )
          Plaintiff,          )
    v.                                    )
                                            )   Ct No. 20-00008
UNITED STATES                               )
              Defendant,       )
                                            )
    and                                   )
                                            )
NINGBO MASTER INTERNATIONAL                  )
TRADE CO., LTD., GUANGZHOU                    )
JINGYE MACHINERY CO., LTD.,                   )
                                            )
    Defendant-Intervenors              )
_____  )

## DEFENDANT-INTERVENORS' REMAND COMMENTS

Gregory S. Menegaz
Alexandra H. Salzman
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 15th Street, N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Defendant-Intervenors*

Date: June 7, 2024

## TABLE OF CONTENTS

I.   STANDARDS OF REVIEW ........................................................................ 2

II.  COMMERCE'S DETERMINATION THAT IT COULD NOT OPEN THE
     RECORD FOR THE MEXICAN CPI INDEX IS ARBITRARY ........................ 5

     A.  Commerce has Wide Discretion to Open the Record ............. 5

     B.  Commerce Regularly Places CPI Data on the Record .......... 9

III. MEXICO SOURCES THE BEST LABOR RATE ACCORDING TO
     COMMERCE'S OWN PRACTICE AND REGULATIONS ............................ 15

IV.  CONCLUSION AND PRAYER FOR RELIEF ......................................... 22

# TABLE OF AUTHORITIES

## CASES

*Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742, 462 F. Supp. 2d 1333 (2006) ...................................................................................3-4

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) ......................................................................................... 4

*Changzhou Trina Solar Energy Co. v. United States*, 450 F. Supp. 3d 1301 (Ct. Int'l Trade 2020) .................................................. 16

*Citic Trading Co. v. United States*, 27 C.I.T. 356 (2003) ....................... 18

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003). ........................................................................................ 3

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938)............. 4

*Elkay Mfg. Co. v. United States*, 180 F. Supp. 3d 1245 (Ct. Int'l Trade 2016 ........................................................................................ 5

*Elkay Mfg. Co. v. United States*, 2015 Ct. Intl. Trade LEXIS 33 .........6-7

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) .......... 5

*Fresh Garlic Producers Ass'n v. United States*, 2017 Ct. Intl. Trade LEXIS 128 ...................................................................................... 7

*Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 625 F. Supp. 2d 1339 (Ct. Int'l Trade 2009) ............................... 6

*Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159 (Ct. Int'l Trade 2017)....................................................................................... 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ....................................................................................... 3

*Nippon Steel Corp. v. ITC*, 345 F.3d 1379 (Fed. Cir. 2003) .................... 5

*NSK Corp. v. United States*, 774 F. Supp. 2d 1296 (Ct. Int'l Trade 2011) ........................................................................................ 6

*Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343 (Ct. Int'l Trade 2013) ................................................................ 5

*Posco v. United States*, 2022 Ct. Intl. Trade LEXIS 8 ............................ 5

*SeAH Steel VINA Corp. v. United States*, 269 F. Supp. 3d 1335 (Ct. Int'l Trade 2017) ................................................................................ 7

*Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330 (Ct. Int'l Trade 2005) .................... 8

*Shenzhen Xinboda Indus. Co. v. United States*, 361 F. Supp. 3d 1337 (Ct. Int'l Trade 2019) ( ................................................................ 8

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) ............ 3

*SNR Roulements v. United States*, 402 F.3d 1358 (Fed Cir. 2005) ......... 2

*Thai Plastic Bags Indus. Co. v. United States*, 895 F. Supp. 2d 1337 (Ct. Int'l Trade 2013) ............................................................................ 6

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .......................... 3

## STATUTES AND REGULATIONS

19 U.S.C. § 1516a(b)(1)........................................................................ 2-3

19 U.S.C. § 1677b(c) ......................................................................... 18, 20

19 C.F.R. § 351.408(c)(4) ..................................................................... 16-17

## ADMINISTRATIVE DECISIONS

*Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 4,852 (Dep't Comm. January 2017) ........................................ 16

*Chlorinated Isocyanurates From the People's Republic of China:
Preliminary Results of Antidumping Duty Administrative Review;
2021-2022*, 88 FR 43271 (July 7, 2023)......................................................12

*Chlorinated Isocyanurates from the People's Republic of China: Final
Results of Antidumping Duty Administrative Review, and Final
Determination of No Shipments; 2018–2019*, 86 Fed. Reg. 22,932
(April 30, 2021).......................................................................................21

*Certain Collated Steel Staples From the People's Republic of China:
Preliminary Results of the Antidumping Duty Administrative Review
and Preliminary Determination of No Shipments; 2021-2022*, 88 FR
51284 (August 3, 2023)........................................................................11-12

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam:
Preliminary Results of New Shipper Review; 2022-2023*, 89 FR 5862
(January 30, 2024)...................................................................................11

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam:
Preliminary Results of Antidumping Duty Administrative Review,
Preliminary Determination of No Shipments, and Notice of Intent To
Rescind, in Part; 2021-2022*, 88 FR 61525 (September 7, 2023)............11

*Clearon Corporation and Occidental Chemical Corp. v. United States*,
Slip Op. 13-22, at 12-14 (CIT 2013) .........................................................17

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into
Modules, From the People's Republic of China: Final Results of
Antidumping Duty Administrative Review and Final Determination
of No Shipments; 2017–2018*, 85 Fed. Reg. 62,275 (Dep't Commerce
October 2, 2020)......................................................................................16

*Seamless Refined Copper Pipe and Tube From the People's Republic
of China: Preliminary Results of Administrative Review; 2014-2015*,
81 Fed. Reg. 95,110 (Dep't Comm. 2016)..................................................10

*Seamless Refined Copper Pipe and Tube From the People's Republic
of China: Preliminary Results of Administrative Review; 2014-2015*,
81 FR 95110 (December 27, 2016) ...........................................................10

iv

*Small Diameter Graphite Electrodes From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review and Rescission of Review, in Part; 2021-2022*, 88 FR 14133 (March 7, 2023) .......................................................................... 12

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 43290 (July 7, 2023) ............................................................................. 12

*Wooden Bedroom Furniture From the People's Republic of China: Final Results and Final Rescission in Part*, 75 Fed. Reg. 50,992 (August 18, 2010) ................................................................... 10

*Wooden Cabinet and Vanities and Components Thereof From the People's Republic of China: Final Results and Final Determination of No Shipments of the Antidumping Duty Administrative Review; 2021-2022*, 88 FR 76729 (November 7, 2023) ......................................... 11

*Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Results Intent to Rescind, in Part, and Rescission in Part, of Antidumping Duty Administrative Review; 2022-2023* (unpublished February 29, 2024).............................................................. 13

*Xanthan Gum From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 Fed. Reg. 33,350 (Dep't Commerce June 4, 2013) ......................................................... 17-18

## OTHER AUTHORITIES

*Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7,308, 7,345 (Dep't Commerce Feb. 27, 1996) ................................................... 17

# GLOSSARY

CPI...................................................................... Consumer Price Index

ILC....................International Labor Comparisons, the Conference Board

ILO.......................................................International Labor Organization

Defendant-Intervenors Ningbo Master International Trade Co., Ltd. ("Ningbo Master") and Guangzhou Jingye Machinery Co., Ltd. ("Jingye") respectfully file comments on Commerce's remand redetermination.  ECF 95.  In the first remand, Commerce determined that the Malaysia overall manufacturing rate could not be relied upon because of evidence of forced labor and instead Commerce relied upon the Mexican labor rate, but inflated it with the Brazil CPI index.  The Court remanded this, directing Commerce to consider whether it was reasonable to rely on the Brazil CPI index for a Mexican labor rate.  On the second remand, Commerce exercised its right to open the record and instead placed a contemporaneous ILO Mexican labor rate on the record such that no inflation was needed.  The Court then found that Commerce had abused its discretion by opening the record for the Mexican ILO labor rate.  In this third remand, Commerce determined, based upon this opinion and its finding that there was nothing inaccurate or unreliable in the Brazil labor rate, that it had to rely upon the Brazil labor rate.

However, the Court's opinion did not preclude Commerce from opening the record for other information so long as Commerce's

1

reasoning was justified.  Instead of providing a justification, Commerce

took the position that it could not open the record.  Remand at 4 & 8.

This decision is arbitrary and capricious.  In determining not to open

the record, Commerce also decided to rely upon Brazil labor rate instead

of Mexico.  However, the Mexico labor rate is the best available

information and fulfills Commerce's well-established preferences for

surrogate values.  Accordingly, Commerce's reliance on the Brazil labor

rate is not supported by substantial evidence and is also arbitrary.

## I.    STANDARDS OF REVIEW

This Court upholds Commerce's determination if it is supported

by "substantial evidence on the record," and otherwise "in accordance

with law."  19 U.S.C. § 1516a(b)(1)(B)(i); *accord SNR Roulements v.*

*United States*, 402 F.3d 1358, 1361 (Fed Cir. 2005).  Different

standards of review are applicable to the issues in this remand.

This Court will hold as unlawful any administrative decision that

is arbitrary, capricious, or an abuse of discretion.  *See* 19 U.S.C. §

1516a(b)(l)(A).  Normally, an agency decision would be arbitrary and

capricious "if the agency has relied on factors which Congress has not

intended it to consider, entirely failed to consider an important aspect of

2

the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Department acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar circumstances and provide[s] no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003). It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted). An agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48 (citations omitted). Internal inconsistency and self-contradiction do not satisfy this requirement. Indeed, a "principal justification for the administrative state is that in 'area[s] of limitless factual variations, like cases will be treated alike.'" *Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742, 462 F.

Supp. 2d 1333, 1339 (2006) (internal citation omitted).  Thus, when the administering agency treats similarly situated parties differently or fails to consider an important aspect of a problem, its decisions are arbitrary and capricious and subject to reversal.

The Court will also only sustain the Department's factual determination if it is based on substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938)).   Furthermore, "substantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

II.    COMMERCE'S DETERMINATION THAT IT COULD NOT OPEN THE RECORD FOR THE MEXICAN CPI INDEX IS ARBITRARY.

A. Commerce has Wide Discretion to Open the Record.

Commerce's position on remand that it could not reopen the record is contrary to the well-established practice and is thus arbitrary. It is a well-established "general principle that the decision of whether or not to reopen the record upon remand is a matter for an agency to decide." *Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343 (Ct. Int'l Trade 2013); *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) ("The decision to reopen the record is best left to the agency . . . ."); *Nippon Steel Corp. v. ITC*, 345 F.3d 1379, 1382 (Fed. Cir. 2003) ("Whether on remand the Commission reopens the evidentiary record, while clearly within its authority, is of course solely for the Commission itself to determine."); *Posco v. United States*, 2022 Ct. Intl. Trade LEXIS 8, *20 ("Indeed, 'the decision of whether or not to reopen a record following an order remanding an agency decision is a matter within the agency's discretion.'") (internal citation omitted); *Elkay Mfg. Co. v. United States*, 180 F. Supp. 3d 1245, 1260 (Ct. Int'l Trade 2016) ("Ordinarily, the decision of whether or not to reopen a record following an order remanding an agency decision is a matter

within the agency's discretion."); *Thai Plastic Bags Indus. Co. v. United States*, 895 F. Supp. 2d 1337, 1346 (Ct. Int'l Trade 2013) (Upholding "Commerce exercise[ing] its inherent discretion to request additional information" on remand.); *NSK Corp. v. United States*, 774 F. Supp. 2d 1296, 1298 n.4 (Ct. Int'l Trade 2011) (noting that agencies have "inherent discretion to reopen the record" with respect to issues remanded for reconsideration); *Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 625 F. Supp. 2d 1339, 1356 n.18 (Ct. Int'l Trade 2009) (noting that, "[a]lthough Commerce is not being expressly required to reopen the administrative record [with regard to the remanded issue], the agency clearly has the discretion to do so if appropriate").

Indeed, this Court has consistently found Commerce is well within its agency discretion to supplement the record on remand with surrogate value information. In *Elkay Manufacturing*, the plaintiff raised all the same arguments that Plaintiff raises in this case, citing the surrogate value regulation deadlines and objection that the parties "will have a second chance to develop the record after failing to do so during the agency proceeding." *Elkay Mfg. Co. v. United States*, 2015

6

Ct. Intl. Trade LEXIS 33, *10.  The Court rejected these arguments,
reminding Plaintiff that the regulatory surrogate value deadlines are of
no relevance during a judicial review proceeding and that if Commerce
determined to supplement the record with a steel coil surrogate value,
all parties will have the "same opportunity to comment upon any newly-
submitted data and to make arguments in support of or against the
decision Commerce reaches upon remand in valuing the FOP." *Id.*   In
*Fresh Garlic Producers*, Commerce reopened the record for parties to
submit entirely new surrogate countries datasets despite the record
already containing usable information from certain surrogate countries.
*Fresh Garlic Producers Ass'n v. United States*, 2017 Ct. Intl. Trade
LEXIS 128, *11-12; *see also SeAH Steel VINA Corp. v. United States*,
269 F. Supp. 3d 1335, 1358 (Ct. Int'l Trade 2017) (internal citation
omitted) (leaving it to Commerce's discretion whether to reopen the
record to supplement a surrogate value for inland insurance "consistent
with the principle that courts, as a general matter, should allow
agencies to exercise discretion as to whether to reopen an
administrative record on remand."); *Jacobi Carbons AB v. United
States*, 222 F. Supp. 3d 1159, 1195 (Ct. Int'l Trade 2017) ("Nevertheless,

on remand, Commerce may decide whether to reopen and supplement the record" to address surrogate value issues on remand.). *Shenzhen Xinboda Indus. Co. v. United States*, 361 F. Supp. 3d 1337, 1353-1359 (Ct. Int'l Trade 2019) (Discussing throughout that Commerce "obviously" could have reopened the record for additional surrogate value information on remand). The Courts have a practice of finding it is Commerce's discretion to reopen the record, even to supply surrogate value information. *See also: Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330, 1339 (Ct. Int'l Trade 2005) (Noting that Commerce has the ability to reopen the record and collect information on valuing a particular FOP even though parties had the opportunity during the review to submit such information).

While the Court did find that Commerce abused its discretion to open the record for the Mexican ILO data due to a mere preference for this source, nothing in the opinion precludes that Commerce could provide further justification for opening the record for this source or that opening the record for other information would not be justified. Commerce's position on remand that it could not reopen the record is

contrary to this opinion and contrary to the well-established practice above and is thus arbitrary.

## B. Commerce Regularly Places CPI Data on the Record.

Commerce in the past remands properly found it should rely on Mexico for a labor rate instead of Brazil precisely because Mexico produces identical merchandise. The only issue was the missing Mexico CPI index. The Mexico labor rate is from 2016 while the POI was 2018. In the second remand, Commerce even explained that if it was not going to rely on the ILO Mexican labor rate which required no adjustment, "[t]he appropriate course of action would have been to place Mexican CPI data on the record and use it to inflate the Mexican ILC rate as the SV for labor." 2nd Remand at 9, ECF 75. Then, in this remand Commerce found that it could not place the Mexico CPI index on the record due to the Court's opinion, but the Court did not preclude this and it is Commerce's standard practice to place CPI data on the record itself. Accordingly, this decision is also arbitrary given it runs contrary to Commerce's normal practice.

The CPI index is a public indisputable fact, available for all to obtain or publicly verify; and Commerce has a frequent practice of

placing it itself on the record in conjunction with a decision—not finding that it is even considered new information such that a rebuttal deadline would be needed.

Commerce often provides such conversion or inflation data to the record *itself*; for example, in this review Commerce placed the Malaysian exchange rate on the record for its use. *See* Prelim. SV Memo (May 29, 2019) at Exhibit 2, P.R. 207-209; *see also Wooden Bedroom Furniture From the People's Republic of China: Final Results and Final Rescission in Part*, 75 Fed. Reg. 50,992 (August 18, 2010) and accompanying IDM at Comment 34 (discussing using labor data on the record and inflating it using CPI data placed on the record by Commerce itself); *Seamless Refined Copper Pipe and Tube From the People's Republic of China: Preliminary Results of Administrative Review; 2014-2015*, 81 Fed. Reg. 95,110 (Dep't Comm. 2016) and accompanying Prelim. IDM at 24 (discussing where necessary, Commerce adjusted a surrogate value with the Thai CPI that Commerce placed on the record itself); *Seamless Refined Copper Pipe and Tube From the People's Republic of China: Preliminary Results of Administrative Review; 2014-2015*, 81 FR 95110 (December 27, 2016)

and accompanying Prelim. IDM at 24 ((discussing where necessary, Commerce adjusted a surrogate value with the Thai CPI that Commerce placed on the record itself); *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary Results of New Shipper Review; 2022-2023*, 89 FR 5862 (January 30, 2024) and accompanying Prelim. IDM (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself); *Wooden Cabinet and Vanities and Components Thereof From the People's Republic of China: Final Results and Final Determination of No Shipments of the Antidumping Duty Administrative Review; 2021-2022*, 88 FR 76729 (November 7, 2023) and accompanying IDM (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself); *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, and Notice of Intent To Rescind, in Part; 2021-2022*, 88 FR 61525 (September 7, 2023) and accompanying Prelim. IDM (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself); *Certain Collated Steel Staples From the People's Republic of China: Preliminary*

11

*Results of the Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2021-2022*, 88 FR 51284 (August 3, 2023) and accompanying Prelim. IDM (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself); *Chlorinated Isocyanurates From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 43271 (July 7, 2023) and accompanying Prelim. IDM (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself); *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 FR 43290 (July 7, 2023) and accompanying Prelim. IDM (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself); *Small Diameter Graphite Electrodes From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review and Rescission of Review, in Part; 2021-2022*, 88 FR 14133 (March 7, 2023) and accompanying Prelim. IDM (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself);

*Wood Mouldings and Millwork Products from the People's Republic of China: Preliminary Results Intent to Rescind, in Part, and Rescission in Part, of Antidumping Duty Administrative Review; 2022-2023* (unpublished February 29, 2024) and accompanying Prelim. IDM at 18 (discussing adjusting a surrogate value with the CPI index that Commerce placed on the record itself).

Thus, it is Commerce's common normal practice to place the CPI index itself on the record with a reference to webpage for the International Finance Statistics source when Commerce needs to make an adjustment for a surrogate value. This self-placement of minor adjustment factors occurs in most every review and investigation. The CPI index, exchange rates, and their kin are publicly available non-disputable data points widely used and obtained by Commerce to complete its calculations.

Accordingly, Commerce's position that it could not reopen the record to place the CPI index on the record or otherwise publicly recognize the CPI index in its decision is contrary to well-established practice and thus arbitrary.

13

Further, Commerce does not make surrogate value decisions based on the availability (or not) of a CPI index, but rather selects the best available surrogate value based on its normal criteria and then adjusts with a CPI index, indeed placing it on the record itself, if such an adjustment is needed. This practice is evidenced above by a mere sampling of the many times Commerce regularly does this, but Commerce also stated this was its practice.

In the second remand, Commerce explained that it "applies a hierarchy in selecting the most appropriate labor values, does not typically consider the inflator determinative of which data to select, and may place inflators on the record during an administrative proceeding when necessary. Ordinarily, Commerce determines how to inflate the data (if necessary) after the data has been selected." 2nd Remand Results ECF 75 at 9. Commerce acted contrary to this normal practice and ultimately did not rely on the best available information when it selected Brazil. *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003) (The Department acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar

14

circumstances and provide[s] no reasonable explanation for the change in practice.").

Further, the Brazil CPI index is also flawed.  The Brazil labor rate is in USD, but the CPI is based on Brazilian Real.  Commerce even found this was a reason not to rely on the Brazil rate in the second draft remand.  *See* 2nd Draft Remand Results at 3; Appx 3638 ("Thus, it would also be inappropriate to use the Brazilian CPI data, which measure the increases of prices denominated in Brazilian real, on the record to inflate the Brazilian labor wage rate from the ILC, which was denominated in U.S. dollars.").  Therefore, using this rate introduces inaccuracies as well, further justifying that Commerce should have found it could place the Mexican CPI index or other information on the record so Commerce could fulfill its obligation to select the "best" surrogate value and calculate a margin as accurately as possible.

## III.   MEXICO SOURCES THE BEST LABOR RATE ACCORDING TO COMMERCE'S OWN PRACTICE AND REGULATIONS.

Commerce's determination that the Brazil labor rate was the best available information is not supported by substantial evidence.  As explained by Commerce itself in its first two remands, it has a long-standing preference of relying upon surrogate values from a country

15

that produces identical merchandise. *Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 4,852 (Dep't Comm. January 2017) at Comment 1 ("Departmental policy…indicates a preference to select a surrogate country that produces identical merchandise over one that only produces comparable merchandise."); *Changzhou Trina Solar Energy Co. v. United States*, 450 F. Supp. 3d 1301, 1315 (Ct. Int'l Trade 2020) ("Given Commerce's regulatory preference for information gathered from producers of identical or comparable merchandise in the surrogate country, *see* 19 C.F.R. § 351.408(c)(4), Commerce's determination is reasonable."); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017–2018*, 85 Fed. Reg. 62,275 (Dep't Commerce October 2, 2020) and accompanying IDM at Cmt 4 ("The importance we place on the fact that Malaysia produces solar cells and panels, and no other surrogate country does so, is that the surrogate data provided by Malaysia will consist of actual inputs used in producing subject merchandise, as

16

opposed to the data of the other surrogate countries which have no reason to import inputs used specifically to produce solar cells and panels.").

This practice flows from Commerce's normal practice to rely on a sole surrogate country. Even as here where Commerce must rely on a secondary surrogate country for labor, the reliance on a producer of identical merchandise prevents the distortion and margin shopping concerns raised in promulgating 19 C.F.R. 315.408(c). *Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7,308, 7,345 (Dep't Commerce Feb. 27, 1996) (In Commerce's explanation while promulgating the regulations, it was explained that "[t]he preference for using a single country... is meant to prevent parties from 'margin shopping': i.e., to prevent parties from arguing that Commerce combine input prices from different surrogates to achieve the highest or lowest valuations of those inputs."). Commerce's preference to rely on a single surrogate country is premised on the fact that it "limits the amount of distortion introduced into the calculations because a domestic producer would be more likely to purchase a product available in the domestic market." *Xanthan Gum From the People's Republic of China: Final*

17

*Determination of Sales at Less Than Fair Value*, 78 Fed. Reg. 33,350 (Dep't Commerce June 4, 2013) and accompanying IDM at Cmt 2(emphasis added); citing *Clearon Corporation and Occidental Chemical Corp. v. United States*, Slip Op. 13-22, at 12-14 (CIT 2013). Relying on a labor rate from a country that actually produces subject merchandise better fulfills this goal, even when in a secondary country, because it entails that the labor rate would be more similar to the labor rate of an actual producer of subject merchandise. The underlying objective of 19 U.S.C. § 1677b(c) is to obtain the most accurate dumping margins possible. *Citic Trading Co. v. United States*, 27 C.I.T. 356, n12 (2003). Relying on a labor rate a country that produces subject merchandise is the best available information and produces a more accurate margin.

Mexico is a producer of identical merchandise, as evidenced by the fact that the petition itself was against China and Mexico. In contrast, Brazil does not produce identical merchandise. Petitioner acknowledged that "there are no producer of refillable stainless steel kegs." 2nd Remand Results, ECF 75 at 19 (citing to Petition). Petitioner only submitted information that Brazil produces a supposedly comparable product, steel wheels. Pet. SC Comments

18

(December 10, 2018); Appx2796-2800, Appx2805-2806.  In this submission, petitioner cited to the fact that steel wheel production involves cutting rolled steel as supposed evidence that it is comparable, but that is only a small part of the production process.  Producing a pressurized keg and tapping system involves a higher level of technology and raw materials.  Steel wheels are not a comparable product and thus there is no information that Brazil has actual production of even a comparable product.

In sum, the Mexican labor rate is the best available information on the record in accordance with Commerce's own practice and regulations.  This further justified Commerce's reopening of the record.  But even without reopening the record, the Mexican labor rate is the best available information.  As explained above and by Commerce itself, relying on a surrogate value from a country that is not a producer of identical merchandise can introduce inaccuracies.  By relying on the Brazil labor rate, Commerce is moving farther away from the purpose of the surrogate value methodology--- to determine the costs of a Malaysian manufacturer of steel kegs in Malaysia.  While relying on the Mexican labor data is a step removed from this, relying on a country

19

with no known producer of steel kegs is further removed and introduces precisely the distortion and margin shopping that Commerce was concerned with when creating its regulations and policies for surrogate value selection. Accordingly, relying on the Mexican labor rate either with the Brazil CPI index or with no inflation would *still remain* the best available information, required under the statute. 19 U.S.C. 1677b(c)(1). This is underscored by the very small impact of the CPI adjustment.

The adjustment with the Brazil CPI increased the Mexico labor rate a mere 6% or 24 cents. Final Remand SV Memo at "Labor", Rem. PR 11, Appx1717. The Mexican Labor rate was $3.91/hr for 2016, and was inflated to $4.15/hr for 2018 with the Brazil CPI index. *Id.* CPI adjustments are very minor and this adjustment did not even impact the margin assigned to Ningbo Master. When relying on Mexico, Ningbo Master's margin remained the same with or without the CPI adjustment. To depart from Commerce's well-established policy of selecting data from identical producers, when available, due to a lack of information for an adjustment that has no impact on the margin, is not reasonable.

20

Commerce can rely on the Mexico labor rate without inflation. Commerce has relied on less contemporaneous surrogate value data in reviews when the information was still the best available information. *Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, and Final Determination of No Shipments; 2018–2019*, 86 Fed. Reg. 22,932 (April 30, 2021) and accompanying IDM at Comment 4 ("Accordingly, we do not find the Mexican 2018 ILOSTAT data superior to the more specific Mexican 2008 ILOSTAT labor data even though it is less contemporaneous. Although Commerce prefers to value each FOP with contemporaneous SVs, in prior cases, Commerce has selected a labor value from the selected surrogate country regardless of there being other values on the record that may have been more contemporaneous to the POI or period of review, but less specific to the subject merchandise.").

Or, alternatively, Commerce can continue to use the Brazil CPI index. As shown above, the adjustment is small. The adjustment is also usually not dramatically different from one country to another country, particularly as here the country (Brazil) is economically

comparable to Mexico.  Both countries are similarly situated economically and are even in the same region.  The Brazil CPI would be a reasonable alternative for this small adjustment to the far more significant "best available" labor rate located from a Mexican source in accordance with longstanding Commerce practice.

## IV.  CONCLUSION AND PRAYER FOR RELIEF

In light of the foregoing, we respectfully request that this Court find that Commerce's Remand Redetermination is unlawful.  The Court should find that Commerce failed to rely upon the best available information and acted arbitrarily and capriciously when it relied on the Brazil labor rate instead of relying on the Mexican labor rate.

Respectfully submitted,

 /s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
DEKIEFFER & HORGAN, PLLC
Suite 1101
1156 Fifteenth Street N.W.  20005
Tel: (202) 783-6900
Email:  gmenegaz@dhlaw.com

Date: June 7, 2024                         *Counsel to Defendant-Intervenors.*

## WORD COUNT CERTIFICATE OF COMPLIANCE

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Scheduling Order. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 4,148 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
deKIEFFER & HORGAN, PLLC
Suite 1101
1156 Fifteenth Street, N.W.
Washington, D.C. 20005
*Counsel to Defendant-Intervenors*