# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____
                                                    )
NEW AMERICAN KEG, d/b/a              )
AMERICAN KEG COMPANY,             )
                                                    )
   Plaintiff,                   )
                                                    )
 v.                                          )
                                                    )
UNITED STATES,                             )
                                                    )  Court No. 20-00008
   Defendant,                )
                                                    )
and                                               )
                                                    )
NINGBO MASTER INTERNATIONAL)
TRADE CO., LTD., GUANGZHOU      )
JINYE MACHINERY CO., LTD.,         )
                                                    )
   Defendant-Intervenors.  )
                                                    )
_____)

### Defendant's Response To Defendant-Intervenors' Comments Upon The Department Of Commerce's Third Remand Redetermination

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:

VANIA WANG
Senior Attorney
Department of Commerce
Office of the Chief Counsel
  for Trade Enforcement
  & Compliance

ASHLEY AKERS
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 353-0521

July 22, 2024

Attorneys for Defendant

# **TABLE OF CONTENTS**

BACKGROUND ................................................................................. 3

    I.    Administrative Proceedings ................................................. 3

    II.   First And Second Remand Proceedings ............................... 5

    III.  Third Remand Opinion And Third Remand Redetermination
            Proceedings ...................................................................... 11

ARGUMENT .................................................................................. 12

    I.    Standard of Review ........................................................... 12

    II.   Commerce's Determination That The Brazilian ILC Data Were The
            Best Available Information On The Record Was Reasonable And
            Supported By Substantial Evidence ................................... 13

          A. Legal Framework ......................................................... 13

          B. Commerce's Decision Not To Reopen The Record Was In
             Accordance With The Court's Order ............................. 15

          C. The Brazil ILC Data Were The Best Available Information On The
             Record ......................................................................... 21

CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Amanda Foods (Vietnam) Ltd. v. United States*,
  774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011).........................................................13

*Bethlehem Steel Corp. v. United States*,
  223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002).........................................................12

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012) ...............................................................................16

*Fresh Garlic Producers Ass'n v. United States*,
  190 F. Supp. 3d 1302 (Ct. Int'l Trade 2016).........................................................16

*Nation Ford Chem. Co. v. United States*,
  166 F.3d 1373 (Fed. Cir. 1999) ...............................................................................14

*New American Keg v. United States*,
  Court No. 20-00008, Slip Op. 24-11 (Ct. Int'l Trade Jan. 31, 2024)........... *passim*

*Pro-Team Coil Nail Enter. Inc. v. United States,*
  587 F. Supp. 3d 1364 (Ct. Int'l Trade 2022).........................................................15

*Shandong Rongxin Imp. & Exp. Co. v. United States,*
  203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017)......................................................... 16

*Xiamen Int'l Trade & Indus. Co. v. United States*,
  953 F. Supp. 2d 1307 (Ct. Int'l Trade 2013).........................................................14

## ADMINISTRATIVE DETERMINATIONS

*Refillable Stainless Steel Kegs from the People's Republic of China, the Federal Republic of Germany, and Mexico*, 83 Fed. Reg. 52,195 (Dep't of Commerce Oct. 16, 2018) ...........................................................................................................3

*Refillable Stainless Steel Kegs From the People's Republic of China*, 84 Fed. Reg. 25,745 (Dep't of Commerce June 4, 2019) .............................................................4

*Refillable Stainless Steel Kegs From the People's Republic of China*, 84 Fed. Reg. 25,745 (Dep't of Commerce June 4, 2019) ............................................................4

*Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production: Labor*, 76 Fed. Reg. 36,092 (Dep't of Commerce June 21, 2011) ..................................................................................8, 18

*Polyester Staple Fiber From the People's Republic of China*, 75 Fed. Reg. 1,336 (Dep't of Commerce Jan. 11, 2010)...........................................................................14

Import Administration Policy Bulletin 04.1, *Non-Market Economy Surrogate Country Selection Process*, at 2 n.6 (March 1, 2004)...............................................19

*Certain Small Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe From Romania*, 70 Fed. Reg. 7,237 (Dep't of Commerce Feb. 11, 2005) .....21

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 79 Fed. Reg. 57,047 (Dep't of Commerce Sept. 24, 2014) .........................................21

*Chlorinated Isocyanurates from the People's Republic of China:* 86 Fed. Reg. 22,932 (Dep't of Commerce Apr. 30, 2021)...........................................................23

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

————————————————————— )
                                                            )
NEW AMERICAN KEG, d/b/a                   )
AMERICAN KEG COMPANY,                    )
                                                            )
                        Plaintiff,                      )
                                                            )
            v.                                              )
                                                            )
UNITED STATES,                                    )
                                                            )    Court No. 20-00008
                        Defendant,                   )
                                                            )
and                                                        )
                                                            )
NINGBO MASTER INTERNATIONAL)
TRADE CO., LTD., GUANGZHOU           )
JINYE MACHINERY CO., LTD.,              )
                                                            )
            Defendant-Intervenors.          )
                                                            )
————————————————————— )

## <u>ORDER</u>

Upon consideration of defendant-intervenors' comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained.

Date:_____                    _____
        New York, NY                                          Judge

# GLOSSARY

| | |
|---|---|
| ILC | International Labor Comparisons |
| SV | Surrogate Value |
| CPI | Consumer Price Index |

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____
)
NEW AMERICAN KEG, d/b/a      )
AMERICAN KEG COMPANY,     )
                          )
       Plaintiff,     )
                          )
    v.        )
                          )
UNITED STATES,      )
                          )    Court No. 20-00008
       Defendant,    )
                          )
and       )
                          )
NINGBO MASTER INTERNATIONAL)
TRADE CO., LTD., GUANGZHOU   )
JINGYE MACHINERY CO., LTD.,   )
                          )
     Defendant-Intervenors.   )
                          )
_____)

## Defendant's Response To Defendant-Intervenors' Comments Upon The Department Of Commerce's Third Remand Redetermination

Defendant, the United States, respectfully submits this response to the comments submitted by defendant-intervenors Ningbo Master International Trade Co., Ltd. (Ningbo Master) and Guangzhou Jingye Machinery Co., Ltd. (Jingye) (collectively, respondents), concerning the

third remand redetermination filed by the United States Department of
Commerce pursuant to a remand order by this Court. *See* Third
Remand Redetermination (March 26, 2024) (P.3R.R. 6),[1] ECF No. 95,
Appx4479-4489; Respondents Cmts (June 7, 2024), ECF No. 99. As
discussed below, the third remand redetermination complies with the
Court's remand order that followed *New American Keg v. United States*,
Court No. 20-00008, Slip Op. 24-11 (Ct. Int'l Trade Jan. 31, 2024) (third
remand opinion). Remand Order (Jan. 1, 2024), ECF No. 94.
Accordingly, the Court should sustain Commerce's third remand
redetermination.

---

[1] Documents on the investigation administrative record are
designated as "P.R." or "C.R." References to the documents on the
administrative record for the first remand redetermination are
designated as "P.1R.R." or "C.1R.R." References to documents on the
administrative record of the second remand redetermination are
designated as "P.2R.R." or "C.2R.R." And references to documents on
the administrative record of the third remand redetermination are
designated as "P.3R.R."

2

# BACKGROUND

## I.    Administrative Proceedings

On September 20, 2018, plaintiff New American Keg Company
d/b/a American Keg Company (American Keg) filed a petition, which
included data from the International Labor Comparisons (ILC) for
Brazil and Mexico.  Petition (September 20, 2018) (P.R. 1-2) (C.R. 1-2),
Appx2109-2753. Commerce initiated an investigation of refillable
stainless steel kegs from China on October 10, 2018.  *See Refillable*
*Stainless Steel Kegs from the People's Republic of China, the Federal*
*Republic of Germany, and Mexico*, 83 Fed. Reg. 52,195 (Dep't of
Commerce Oct. 16, 2018) (LTFV investigation initiation notice) (P.R.
27), Appx2786-2792.  Commerce selected Ningbo Master and Penglai
Jinfu Stainless Steel Products (Jinfu) for individual examination as
mandatory respondents based on U.S. Customs and Border Protection
data.  Respondent Selection Memorandum (Oct. 31, 2018) (P.R. 45)
(C.R. 17), Appx1823-1829.  On November 26, 2018, Jinfu informed

Commerce that it would not participate in the investigation. Jinfu's
Withdrawal Letter (Nov. 26, 2018) (P.R. 91), Appx2793-2795.

On June 4, 2019, Commerce published its preliminary
determination. *See Refillable Stainless Steel Kegs From the People's
Republic of China*, 84 Fed. Reg. 25,745 (Dep't of Commerce June 4,
2019) (preliminary determination) (P.R. 216), Appx3508-3510, and
accompanying decision memorandum (PDM) (P.R. 203), Appx3360-
3394. Commerce preliminarily selected Malaysia as the primary
surrogate country and relied on Malaysian data for all factors of
production. PDM at 11 (P.R. 203), Appx3370. Commerce preliminarily
calculated antidumping rates of 2.01 percent for Ningbo Master and the
separate rate companies, and 79.71 percent for the China-wide entity.
Preliminary Determination at 25,746 (P.R. 216), Appx3509.

After considering the interested parties' comments on the
preliminary determination, on October 24, 2019, Commerce issued its
final determination. *Refillable Stainless Steel Kegs From the People's
Republic of China*, 84 Fed. Reg. 57,010 (Dep't of Commerce Oct. 24,
2019) (Final Determination) (P.R. 265), Appx3550-3552, and

4

accompanying Issues and Decision Memorandum (IDM) (P.R. 251)

Appx3527-3549.  Commerce continued to use the Malaysia surrogate

labor value.  IDM at 9-12, Appx3535-3538.  Commerce calculated a *de*

*minimis* antidumping duty rate for Ningbo and the separate rate

respondents, and 77.13 percent for the China-wide entity.  Final

Determination, 84 Fed. Reg. at 57,011, Appx3551; IDM at 4, Appx3530.

## II.  <u>First And Second Remand Proceedings</u>

On March 23, 2021, this Court issued the first remand opinion

holding that Commerce's use of the labor data from Malaysia was not

supported by substantial evidence.  *New American Keg v. United States*,

Court No. 20-00008, Slip Op. 21-30 (Ct. Int'l Trade Mar. 23, 2021) (first

remand opinion).  On May 12, 2021, Commerce issued its draft first

remand redetermination.  Draft First Remand (May 12, 2021) (P.1R.R.

4) (C.1R.R. 10), Appx1000-1011.  Commerce determined that Malaysia

labor data were not the best available information on the record and,

thus, used the Brazilian ILC labor data.  *Id*. at 7, Appx1006.

In response, on May 19, 2021, plaintiff and Ningbo Master timely

submitted comments.  American Keg Draft First Remand Comments

(May 19, 2021) (P.1R.R. 8) (C.1R.R. 13), Appx2096-2108; Ningbo Master

Draft First Remand Comments (May 19, 2021) (P.1R.R. 7), Appx3557-

3565. In its comments on Commerce's use of the labor data, Ningbo

Master observed that there is an additional Mexican labor surrogate

value on the record from the same source as the Brazilian labor

surrogate value. Appx3554.

On July 7, 2021, Commerce issued the final of its first remand

redetermination. First Remand Redetermination (July 7, 2021),

P.1R.R. 9, Appx1451-1474. Commerce continued to find that Malaysia

labor data were not the best available information on the record. *Id.* at

7, Appx1457. Commerce compared the Mexican ILC labor data with the

Brazilian ILC labor data and found that both were from the same

source and appeared on the record on the same document. *Id.* at 18,

Appx1468. Both were non-contemporaneous and from 2016 and "both

countries are at the same level of economic development as China." *Id.*

After comparing the Mexican ILC labor data and the Brazilian ILC

labor data, Commerce explained that Mexico produces identical

merchandise, whereas Brazil produces only comparable merchandise.

6

First Remand Redetermination at 17-19, Appx1467-1469. As such, Commerce determined that the Mexican ILC labor data constituted the best information available to value Ningbo Master's labor factors of production. *Id.*, Appx1467-1469.

On September 13, 2022, this Court issued the second remand opinion, holding that Commerce must further explain how the Brazilian consumer price index (CPI) used to inflate the Mexico ILC data is relevant to the Mexican ILC data. *New American Keg v. United States*, Court No. 20-00008, Slip Op. 22-106 at 6 (Ct. Int'l Trade Sept. 13, 2022) (second remand opinion). This Court also held that Commerce's change from using the Brazilian ILC data in the draft remand redetermination to the Mexican ILC data in the final remand redetermination was not an abuse of discretion. *Id.* at 7. Thus, this Court remanded to Commerce to "explain why it was appropriate to inflate a Mexican labor wage rate using Brazilian data and why doing so was superior to using a Brazilian labor wage rate." *Id.* at 9.

On October 6, 2022, Commerce issued a draft second remand redetermination, finding that "it was improper to inflate the Mexican

7

labor wage rate from the ILC using Brazilian consumer price index (CPI) data." Draft Second Remand (October 6, 2022) (P.2R.R. 1) (C.2R.R. 1), Appx3636-3643. Commerce explained that because the Brazilian CPI was denominated in Brazilian real, it could not be used to inflate the Brazilian ILC data, which was denominated in U.S. dollars. *Id.* at 3, Appx3638. Citing accuracy concerns, Commerce reopened the record. *Id.*, Appx3638. In particular, because of its stated policy in *Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production: Labor*, 76 Fed. Reg. 36,092 (Dep't of Commerce June 21, 2011) (*Labor Methodologies*), Commerce placed contemporaneous ILO data on the record rather than supplementing the record with an inflator for the non-contemporaneous ILC data. Commerce used the Mexican ILO data in its draft remand redetermination to value the respondent's labor inputs. *Id.* at 3-4, Appx3638-3639.

In response, on October 14, 2022, plaintiff timely submitted comments. American Keg Draft Second Remand Comments (October 14, 2022) (P.2R.R. 4) (C.2R.R. 5), Appx4453-4472. Plaintiff argued that

Commerce has previously inflated labor data using the currency of the country where the expense was incurred rather than the currency in which the labor data were reported. *Id.* at 5-6, Appx4457-4458. Therefore, plaintiff argued that Commerce should rely on the Brazilian ILC data as the surrogate value for the labor input and use the Brazilian CPI inflator already on the record. *Id.*, Appx4457.

In its final second remand redetermination, Commerce acknowledged that it had "mischaracterized the applicability of using Brazilian CPI data for inflating a Brazilian surrogate denominated in U.S. dollars," but continued to find that reopening the record was necessary because it needed a Mexican inflator to inflate the Mexican ILC data. Second Remand Redetermination (Nov. 14, 2022) (P.2R.R. 5) (C.2R.R. 6), Appx4428-4442. Because of Commerce's stated policy preferring ILO data, Commerce continued to use the Mexican ILO data placed on the record in the draft remand to value the labor surrogate values. *Id.* at 3-4, Appx4430-4431.

## III.  Third Remand Opinion And Third Remand Redetermination Proceedings

On January 31, 2024, the Court issued the third remand opinion, holding that Commerce had abused its discretion when it reopened the record.  Third Remand Opinion at 4.  This Court held that the Brazilian information was correct as a factual matter, so the agency's reopening of the record because of the purported need for accurate data was not supported by substantial evidence.  *Id*.  This Court rejected Commerce's reasoning because it uses figures from countries that produce comparable products when there are data difficulties with countries that produce identical products and because the burden of creating an adequate record lies with the parties.  *Id*. at 4-5.  This Court also held that because constant reopening and supplementation of the record would lead to inefficiency and delay in finality, supplementation is permissible in a small number of circumstances such as where existing data are inaccurate.  *Id*. at 5.  Because Commerce made no showing that the Brazilian wage information on the record was inaccurate or otherwise unsuitable for calculation of the margin, this Court held that Commerce had abused its discretion in reopening the record.  *Id*. at 5-6.

10

Therefore, the Court ordered Commerce "to explain why the record established during the investigation was unsuitable for supporting an accurate dumping calculation."  Remand Order at 1.

On February 21, 2024, Commerce issued the draft third remand, finding that the Brazilian ILC data are the best available information on the record.  Draft Third Remand (February 21, 2024) (P.3R.R. 1), Appx4473-4478.  On March 4, 2024, petitioner and Ningbo Master filed comments on the draft third remand.  American Keg Draft Third Remand Comments (March 4, 2024) (P.3R.R. 4), Appx4490-4495; Ningbo Master Draft Third Remand Comments (March 4, 2024) (P.3R.R. 5), Appx4496-4509.  Ningbo Master argued that Commerce should reopen the record and place the Mexican inflator on the record or use the Brazilian inflator on the Mexican ILC data. Ningbo Master Draft Third Remand Comments, Appx4496-4509.

On March 26, 2024, Commerce issued its final remand redetermination, declining to reopen the record, continuing to find that the Brazilian ILC data were the best available information on the

11

record, and inflating the Brazilian ILC data using the Brazilian inflator on the record.  Third Remand Redetermination at 3-10, Appx4481-4488.

## ARGUMENT

Commerce complied with the Court's remand order and its remand redetermination is supported by substantial evidence and in accordance with law.  Commerce declined to reopen the record in accordance with this Court's third remand opinion and determined that because of the data difficulties with the Mexican ILC data, the non-contemporaneous Brazilian ILC data, inflated using a Brazilian inflator, were the best information available on the record.  Third Remand Redetermination at 3-10, Appx4481-4488.

## I.  Standard Of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002).  Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is

12

otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v.*

*United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011).

## II.    Commerce's Determination That The Brazilian ILC Data Were The Best Available Information On The Record Was Reasonable and Supported By Substantial Evidence

### A.    Legal Framework

In an antidumping proceeding, Commerce must determine

whether subject merchandise is or is likely to be sold at less than fair

value in the United States by comparing the export price (*i.e.*, the price

of the goods sold in the United States) and the normal value of

merchandise.  19 U.S.C. § 1675(a)(2)(A).  Normal value is usually

determined by reference to sales of merchandise in the home market,

sales of merchandise in a third country, or a constructed value of the

merchandise.  *See* 19 U.S.C. § 1677b(a)(1), (4).  However, in cases

involving nonmarket economy countries, such as China, Commerce

must determine normal value by using the "best available information"

from market economy countries to value the factors of production of the

subject merchandise.  19 U.S.C. § 1677b(c)(1).

Commerce has broad discretion in selecting this information. *See Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) ("While {section} 1677b(c) provides guidelines to assist Commerce in this process, this section also accords Commerce wide discretion in the valuation of factors of production in the application of those guidelines."). Commerce's practice when selecting the best available information for valuing factors of production is to select, to the extent practicable, surrogate values that are product-specific, representative of a broad-market average, publicly available, contemporaneous with the period of review or investigation, and free of any taxes or duties. *See, e.g.*, *Polyester Staple Fiber From the People's Republic of China*, 75 Fed. Reg. 1,336 (Dep't of Commerce Jan. 11, 2010); *see also Xiamen Int'l Trade & Indus. Co. v. United States*, 953 F. Supp. 2d 1307, 1312 (Ct. Int'l Trade 2013) (explaining that Commerce has established these criteria "because no statute or regulation defines the best available information").

14

## B. Commerce's Decision Not To Reopen The Record Was In Accordance With The Court's Order

As an initial matter, Commerce followed this Court's opinion in declining to reopen the record in the third remand redetermination. In its third remand opinion, this Court examined Commerce's stated basis for reopening the record in the second remand and found that reopening the record was an abuse of discretion. Third Remand Opinion at 4-6. Respondents do not present any new justifications regarding reopening the record that Commerce did not already use in the second remand redetermination. And, even if respondents did offer new justifications to reopen the record, Commerce was not obligated to do so when the record already contained a usable data set with all information needed to derive a surrogate value for labor. *See, e.g., Pro-Team Coil Nail Enter. Inc. v. United States,* 587 F. Supp. 3d 1364, 1374 (Ct. Int'l Trade 2022) ("While Commerce retains significant discretion to determine whether to reopen the record on remand, in most cases, this is not

something the court will require simply based on a plaintiff's argument that better information is available.").

The decision regarding whether to reopen a record following an order remanding an agency decision is a matter within the agency's discretion. *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012); *see also Shandong Rongxin Imp. & Exp. Co. v. United States,* 203 F. Supp. 3d 1327, 1337-38 (Ct. Int'l Trade 2017) (explaining that *Essar Steel* does not prescribe a formula for granting Commerce permission to reopen the record and that Commerce may generally reopen the administrative record on remand) (quoting *Fresh Garlic Producers Ass'n v. United States*, 190 F. Supp. 3d 1302, 1306 (Ct. Int'l Trade 2016)). Moreover, this Court held that Commerce had abused its discretion in the second remand determination when Commerce had reopened the record for accuracy reasons and because the Mexican ILC data lacked an appropriate inflator. Third Remand Opinion at 4-6. Consequently, Commerce analyzed the data on the record and found that, "{c}onsidering the Court's ruling, Commerce finds no definitive information on the record showing that the Brazilian wage information

16

is inaccurate or otherwise unsuitable for the calculation of Ningbo

Master's margin" and that Commerce could inflate the Brazilian ILC

data. Third Remand Redetermination at 4, Appx4482.

Respondents argue that, although this Court held that Commerce

had abused its discretion when it reopened the record in the second

remand redetermination, Commerce was not precluded from providing

further justification, nor did the Court hold that reopening the record

for other information would not be justified. Respondents Cmts at 8.

However, respondents notably do not suggest what other justification

Commerce could have used to reopen the record. Indeed, in the second

remand redetermination, Commerce explained that it reopened the

record to calculate margins as accurately as possible. Second Remand

Redetermination at 3, 9, Appx4430, Appx4436. Yet, this Court held

that, "{t}he agency's reopening the record because of a purported need

for accurate data is not supported by substantial evidence." Third

Remand Opinion at 4. This Court explained that "the Brazilian

information on the record *was* correct as a factual matter." *Id.* at 4.

Respondents contend that placing CPI data on the record is Commerce's standard practice, the CPI data are publicly available, and this Court did not prevent Commerce from doing so.  Respondents Cmts at 9-13.  However, this Court's holding that Commerce had abused its discretion in reopening the record was directed at Commerce's decision to reopen the record and did not focus on Commerce's decision to place the ILO data instead of Mexican CPI data on the record.  Third Remand Opinion at 4-6.  Rather, in the second remand redetermination, after Commerce reopened the record for accuracy reasons, Commerce then determined what information should be placed on the record.  Second Remand Redetermination at 9, Appx4436.  Commerce stated that "{o}rdinarily, Commerce determines how to inflate the data (if necessary) after the data has been selected."  *Id.* at 9 (citing *Labor Methodologies*), Appx4436.  However, the Court analyzed the reasons that Commerce used to reopen the record in the second remand order, not Commerce's reasoning to place the ILO data on the record rather than the Mexican CPI data.  In addition to holding that accuracy was not a sufficient basis for reopening the record, this Court rejected

18

Commerce's reopening of the record, reasoning that "Commerce uses

figures from countries that produce comparable products when there

are 'data difficulties' with countries that produce identical products"

and that although there were data difficulties with the Mexican ILC

data, there were no such difficulties with the Brazilian ILC data.  Third

Remand Opinion at 4.  As such, the Court held the basis for Commerce's

reopening of the record insufficient, not that Commerce should have

placed the Mexican inflator rather than the ILO data on the record.

Respondents assert that Commerce does not choose the best

available data based upon the availability of inflator data and acted

contrary to its normal practice.  Respondents Cmts at 14.  However, as

explained above, this Court rejected Commerce's reopening of the record

based on Commerce's stated basis.  Third Remand Opinion at 4.  The

completeness of the data is still a factor in Commerce's determination.

Import Administration Policy Bulletin 04.1, *Non-Market Economy*

*Surrogate Country Selection Process*, at 2 n.6 (March 1, 2004).  As this

Court has stated, "Commerce uses figures from countries that produce

comparable products when there are 'data difficulties' with countries

19

that produce identical products." Third Remand Opinion at 4. Here, Commerce analyzed both the 2016 Mexican and Brazilian ILC data. Third Remand Redetermination at 6-9, Appx4484-4487. Both data sets were non-contemporaneous by the same amount of time, but the inflator for Brazil was on the record while the inflator for Mexico was not. *Id.* at 10, Appx4488. Therefore, Commerce's decision to not reopen the record is in accordance with this Court's remand opinion.

Respondents complain that the Brazilian CPI data are flawed because the Brazilian labor rate is denominated in U.S. dollars, which Commerce stated in the draft second remand. Respondents Cmts at 15. However, Commerce acknowledged in the final second remand redetermination that "we mischaracterized the applicability of using Brazilian CPI data for inflating a Brazilian surrogate denominated in U.S. dollars in one of our statements." Second Remand Redetermination at 8, Appx4435. Commerce has stated that "we have reviewed our inflation methodology and find that U.S. dollar-denominated surrogate values should be inflated based on the country in which the expense was incurred, not the currency in which it was

20

reported." *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 79 Fed. Reg. 57,047 (Dep't of Commerce Sept. 24, 2014) and accompanying Issues and Decision Memorandum at Comment 4 (quoting *Certain Small Diameter Carbon and Alloy Seamless Standard, Line, and Pressure Pipe From Romania*, 70 Fed. Reg. 7,237 (Dep't of Commerce Feb. 11, 2005) and accompanying Issues and Decision Memorandum at cmt. 7); Third Remand Redetermination at 9, Appx4487. Because the Brazilian labor expenses were incurred in Brazil, the Brazilian CPI is an appropriate inflator to use on the Brazilian ILC data.

### C. The Brazil ILC Data Were The Best Available Information On The Record

Commerce's determination that the Brazilian ILC data were the best available information on the record to value labor is supported by substantial evidence. Commerce examined both the Brazilian ILC data and the Mexican ILC data and found that both were equally non-contemporaneous. Third Remand Redetermination at 6, Appx4484. Although Mexico produced identical merchandise and Brazil produced only comparable merchandise, a Brazilian inflator was on the record

21

whereas a Mexico inflator was not.  *Id.* at 10, Appx4488.  Because of the data difficulties with the Mexican ILC data, Commerce used the Brazilian ILC data, inflated using the Brazilian inflator, to value surrogate labor.  *Id.*, Appx4488.

Respondents argue that the Mexico ILC data are the best available information because Mexico produces identical merchandise while Brazil only produces comparable merchandise.  Respondents Cmts at 19.  Although the type of merchandise (identical versus comparable) may be a factor in Commerce's determination of the best available information on the record, as this Court stated, "Commerce uses figures from countries that produce comparable products when there are 'data difficulties' with countries that produce identical products."  Third Remand Opinion at 4.  Respondents' analysis ignores the "data difficulties" associated with the Mexican ILC data.  In other words, as Commerce explained, the Mexican and Brazilian ILC data from 2016 were equally non-contemporaneous, but there is no Mexican inflator for the Mexico ILC data on the record whereas there is a

Brazilian inflator for the Brazilian ILC data.  Third Remand
Redetermination at 10, Appx4488.

Respondents contend that using the Brazilian CPI inflator with
the Mexican labor data would only result in a minor increase,
Respondents Cmts at 20, and argue that Commerce could have used the
Brazilian CPI inflator with the Mexican data.  Respondents Cmts at 21-
22.  However, "Commerce has no practice of adjusting the underlying
data from one alternative surrogate country using another alternative
surrogate country's CPI data."  Third Remand Redetermination at 9,
Appx4487.  Moreover, this Court has questioned the appropriateness of
inflating a Mexican labor wage rate using Brazilian CPI data, and
sought an explanation for why doing so was superior to using the
Brazilian labor wage rate.  Second Remand Opinion at 6; Third Remand
Redetermination at 9-10, Appx4487-4488.  "{E}ven though both Mexico
and Brazil are economically comparable countries in terms of the gross
national product per capita, and are even domiciled in the same region,
these facts are not dispositive that the rate of inflation experienced by
each country is the same."  Third Remand Redetermination at 10,

Appx4488.  Additionally, respondents do not cite any case in which an inflator from one country is used for the other.

Respondents also argue that Commerce could have relied on the Mexican labor data without inflation.  Respondents Cmts at 21.  To support their argument, respondents cite *Chlorinated Isocyanurates from the People's Republic of China:* 86 Fed. Reg. 22,932 (Dep't of Commerce Apr. 30, 2021) (final admin. review) and accompanying Issues and Decisions Memorandum (*Chlorinated Isocyanurates* IDM) at Comment 4.  *Id.*  However, in *Chlorinated Isocyanurates*, Commerce inflated the non-contemporaneous Mexican data using Mexico CPI data. *Chlorinated Isocyanurates* IDM at Comment 4 ("Commerce has previously found that there is no basis to conclude that its normal method of adjusting the SVs using the CPI rate for Mexico, as published by the International Monetary Fund, fails to properly account for inflation over this time period.  Moreover, {this Court} has upheld our use of the 2008 ILOSTAT data and our practice of inflating this data to the period of review in a prior administrative review involving the same respondent.") (citations omitted).  As such, respondents offer no support

24

that Commerce has relied on non-contemporaneous data without inflation.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's third remand redetermination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

<u>/s/ Patricia M. McCarthy</u>
PATRICIA M. MCCARTHY
Director

OF COUNSEL:                          <u>/s/ Ashley Akers</u>
VANIA WANG                           ASHLEY AKERS
Senior Attorney                      Trial Attorney
Department of Commerce               U.S. Department of Justice
Office of the Chief Counsel          Civil Division
  for Trade Enforcement            Commercial Litigation Branch
  & Compliance                     P.O. Box 480
                                     Ben Franklin Station
                                     Washington, D.C.  20044
                                     Tel: (202) 353-0521

July 22, 2024                        Attorneys for Defendant

25