# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| NEW AMERICAN KEG, d/b/a AMERICAN KEG COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Court No. 20-00008 ) |
| UNITED STATES, | ) ) |
| Defendant, and | ) Hon. M. Miller Baker, ) Judge ) |
| NINGBO MASTER INTERNATIONAL TRADE CO., LTD, and GUANGZHOU JINGYE MACHINERY CO., LTD. | ) ) ) ) ) |
| Defendant-Intervenors. | ) ) |

## <u>PROPOSED ORDER</u>

Upon consideration of the Final Results of Redetermination

Pursuant to Court Remand filed by the Department of Commerce on

("Commerce") on March 26, 2024, and all other papers and proceedings

herein, it is hereby

**ORDERED** that Commerce's Final Results of Redetermination Pursuant to Court Remand (Mar. 25, 2024), ECF No. 95, are sustained, and it is further

**ORDERED** that judgment is entered accordingly for Defendant the United States.

 

_____
M. Miller Baker, Judge

Dated: _____
       New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NEW AMERICAN KEG, d/b/a AMERICAN KEG COMPANY, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Court No. 20-00008 ) |
| UNITED STATES, | ) ) |
| Defendant, | ) Hon. M. Miller Baker, ) Judge |
| and | ) ) |
| NINGBO MASTER INTERNATIONAL TRADE CO., LTD, and GUANGZHOU JINGYE MACHINERY CO., LTD. | ) ) ) ) |
| Defendant-Intervenors. | ) ) |

## PLAINTIFF'S COMMENTS ON FINAL RESULTS OF THIRD REDETERMINATION PURSUANT TO COURT REMAND

Whitney M. Rolig
Andrew W. Kentz
Nathaniel Maandig Rickard

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave., N.W.
Suite 700
Washington, DC  20036
(202) 331-4040

August 5, 2024                  *Counsel to American Keg Company*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................i

TABLE OF AUTHORITIES .........................................................ii

GLOSSARY ...............................................................................v

STATEMENT OF FACTS .............................................................2

    I.    Investigation Proceedings .................................3
    II.   Appeal Proceedings.............................................6
    III.  Third Remand Proceeding..................................9

STANDARD OF REVIEW............................................................10

SUMMARY OF ARGUMENT ......................................................12

ARGUMENT ...............................................................................13

    I.    Commerce's Determination to Rely on the Established
        Administrative Record Was Lawful .................................13
      A.   Commerce Lawfully Exercised Its Discretion When
           Relying on the Existing Administrative Record..........15
      B.   Commerce Lawfully Exercised Its Discretion When
           Relying on a Complete and Accurate Dataset.............18
    II.   Commerce's Determination to Rely on Brazilian Labor
        Data Was Lawful.............................................................21
      A.   Ningbo Master Failed to Exhaust Its Argument
           Regarding Comparability............................................21
      B.   Commerce's Determination Regarding the Superiority
           of Brazilian Labor Data Was Lawful...........................23

CONCLUSION ...........................................................................27

# TABLE OF AUTHORITIES

**Cases**

Am. Tubular Prods., LLC v. United States, No. 13-00029, 2015 WL 5236010, (Ct. Int'l Trade Aug. 28, 2015) ........................................22

Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556 (Fed. Cir. 1984) .................................................................................................10

Bridgestone Ams., Inc. v. United States, 34 C.I.T. 573 (2010) ..........23

Citizens to Preserve Overton Park, Inc v. Volpe, 401 U.S. 402 (1971) .................................................................................................12

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938) ............................10

Essar Steel Ltd. v. United States, 678 F.3d 1268 (Fed. Cir. 2012)8, 17

Fine Furniture (Shanghai) Ltd. v. United States, 353 F. Supp. 3d 1323 (Ct. Int'l Trade 2018) ................................................................9

Freeport Minerals Co. v. United States, 776 F.2d 1029 (Fed. Cir. 1985)....................................................................................................11

IPSCO, Inc. v. United States, 749 F. Supp. 1147 (Ct. Int'l Trade 1990)....................................................................................................23

IPSCO, Inc. v. United States, 965 F.2d 1056 (Fed. Cir. 1992) ..........23

Jiangsu Jiasheng Photovoltaic Tech Co. v. United States, 28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014) ......................................................11

Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto Ins., 463 U.S. 29 (1983) ............................................................................................12

New Am. Keg v. United States, No. 20-00008, 2021 WL 1206153 (Ct. Int'l Trade Mar. 23, 2021) ..........................................................2, 6

New Am. Keg v. United States, No. 20-00008, 2022 WL 4363320 (Ct. Int'l Trade Sept. 13, 2022)................................................. 2, 3, 7, 25

New Am. Keg v. United States, No. 20-00008, 2024 WL 379968 (Ct. Int'l Trade Jan. 31, 2024) ...................................................... passim

Nippon Steel Corp. v. United States, 458 F.3d 1345 (Fed. Cir. 2006) .................................................................................................10

QVD Food Co. v. United States, 658 F.3d 1318 (Fed. Cir. 2011) ..8, 16

Tianjin Mach. Imp. & Exp. Corp. v. United States, 806 F. Supp. 1008 (Ct. Int'l Trade 1992) ........................................................................16

Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352 (Fed. Cir. 2008) ........................................................................................11

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)....................10

## Statutes

19 U.S.C. § 1516a(b)(1)(B) ....................................................................10

19 U.S.C. § 1677b(c)(1)(B)....................................................................13

19 U.S.C. § 1677b(c)(4) .........................................................................14

## Administrative Determinations

Chlorinated Isocyanurates from the People's Republic of China, 86 Fed. Reg. 22,932 (Apr. 30, 2021) (final results 2018-2019) ............26

Draft Results of Redetermination Pursuant to Court Remand, New American Keg v. United States, Court No. 20-00008, Slip Op. 21-30 (CIT March 23, 2021), (May 12, 2021) ....................................6, 7, 21

Draft Results of Redetermination Pursuant to Court Remand, New American Keg v. United States, Court No. 20-00008, Slip Op. 24-11 (CIT January 31, 2024), (Feb. 21, 2024) ..........................................3

Final Results of Redetermination Pursuant to Court Remand, New American Keg v. United States, Court No. 20-00008, Slip Op. 21-30 (CIT March 23, 2021), (July 7, 2021) ...........................................2, 7

Final Results of Redetermination Pursuant to Court Remand, New American Keg v. United States, Court No. 20-00008, Slip Op. 22-106 (CIT September 13, 2022), (Nov. 14, 2022) ...................... passim

Final Results of Redetermination Pursuant to Court Remand, New American Keg v. United States, Court No. 20-00008, Slip Op. 24-11 (CIT January 31, 2024), (March 25, 2024).............................. passim

Refillable Stainless Steel Kegs from the People's Republic of China,
84 Fed. Reg. 25,745 (Dep't Commerce June 4, 2019) (prelim.
determ.) .................................................................................. 6, 14, 19

Refillable Stainless Steel Kegs From the People's Republic of China,
84 Fed. Reg. 57,010 (Dep't Commerce Oct. 24, 2019) (final determ.)
.................................................................................................. passim

## Other Authorities

Antidumping Methodologies in Proceedings Involving Non-Market
Economies:  Valuing the Factor of Production:  Labor, 76 Fed. Reg.
36,092, (Dep't Commerce June 21, 2011) .................................. 14, 25

Policy Bulletin No. 04.01:  Non-Market Economy Surrogate Country
Selection Process (Mar. 1, 2004).................................... 19, 24, 26, 27

# GLOSSARY

| AD | Antidumping |
|---|---|
| CPI | Consumer Price Index |
| IDM | Issues and Decision Memorandum |
| ILC | The Conference Board, International Labor Comparisons |
| ILO | International Labor Organization |
| INEGI | Government of Mexico, Institute of Statistics and Geography |
| PDM | Preliminary Decision Memorandum |
| POI | Period of Investigation |
| SV | Surrogate Value |

## <u>PLAINTIFF'S COMMENTS IN SUPPORT OF FINAL RESULTS OF THIRD REDETERMINATION PURSUANT TO COURT REMAND</u>

Plaintiff American Keg Company ("Plaintiff," "American Keg," or "Petitioner") respectfully submits these comments in support of the U.S. Department of Commerce's ("Commerce") third final remand redetermination in its antidumping duty investigation of refillable stainless steel kegs from the People's Republic of China, published as Final Results of Redetermination Pursuant to Court Remand, <u>New American Keg v. United States</u>, Court No. 20-00008, Slip Op. 24-11 (CIT January 31, 2024), ECF No. 95, (March 25, 2024) ("<u>Third Final Remand</u>"), P3RR 6, Appx4479.[1]  Plaintiff submits these comments in accordance with the Court's order of April 24, 2024, ECF No. 98 (Apr. 24, 2024), and Rule 56.2 of the United States Court of International Trade.

---

[1]  All citations to the third remand administrative record are denoted with the item number for the public document index ("P3RR") as appropriate.  Similarly, all citations to the original, first remand, and second remand administrative records are denoted "PR," "P1RR," and "P2RR," respectively.

# STATEMENT OF FACTS

Commerce's <u>Third Final Remand</u> follows three opinions by this Court concerning the surrogate value for the labor factor of production. <u>See</u> <u>New Am. Keg v. United States</u>, No. 20-00008, 2021 WL 1206153, (Ct. Int'l Trade Mar. 23, 2021), ECF No. 38 ("<u>American Keg I</u>"), <u>remanding</u> <u>Refillable Stainless Steel Kegs From the People's Republic of China</u>, 84 Fed. Reg. 57,010 (Dep't Commerce Oct. 24, 2019) (final determ.) ("<u>Final Determination</u>"), PR 265, Appx3550, and accompanying IDM ("Investigation IDM"), PR 251, Appx3527.  <u>See also</u> <u>New Am. Keg v. United States</u>, No. 20-00008, 2022 WL 4363320, (Ct. Int'l Trade Sept. 13, 2022), ECF No. 73 ("<u>American Keg II</u>"), <u>remanding</u> Final Results of Redetermination Pursuant to Court Remand, <u>New American Keg v. United States</u>, Court No. 20-00008, Slip Op. 21-30 (CIT March 23, 2021), ECF No. 40, (July 7, 2021) ("<u>First Final Remand</u>"), P1RR 9, Appx1451; <u>New Am. Keg v. United States</u>, No. 20-00008, 2024 WL 379968, (Ct. Int'l Trade Jan. 31, 2024), ECF No. 93 ("<u>American Keg III</u>"), <u>remanding</u> Final Results of Redetermination Pursuant to Court Remand, <u>New American Keg v. United States</u>, Court No. 20-00008, Slip

Op. 22-106 (CIT September 13, 2022), ECF No. 74, (Nov. 14, 2022)

("Second Final Remand"), P2RR 5, Appx 4428.

Pursuant to American Keg III, Commerce issued a draft

redetermination on February 21, 2024.  Draft Results of

Redetermination Pursuant to Court Remand, New American Keg v.

United States, Court No. 20-00008, Slip Op. 24-11 (CIT January 31,

2024), (Feb. 21, 2024)  ("Third Draft Remand"), P3RR 1, Appx4473.

Following comments by American Keg and respondent Ningbo Master

International Trade Co., Ltd. ("Ningbo Master"), Commerce filed the

Third Final Remand on March 26, 2024.

By now this Court is familiar with the extended procedural

history of this case.  However, a review of the manner in which

Commerce issued determinations based on the record constructed by

interested parties and this Court's evaluation of those determinations

makes clear that Ningbo Master's request for a fourth remand is

baseless.

## I.    Investigation Proceedings

Both American Keg and Ningbo Master fully availed themselves of

the opportunity to submit data with which to value Ningbo Master's

labor inputs during the underlying investigation. See <u>Third Final</u> <u>Remand</u> at 7, P3RR 6, Appx4485. American Keg submitted and supported the use of 2016 Brazilian labor data published by the ILC, inflated to the 2018 POI using CPI information for Brazil. "Petition for the Imposition of Antidumping Duties on Imports of Refillable Stainless Steel Kegs from Germany, Mexico, and the People's Republic of China and Countervailing Duties on Imports of Refillable Stainless Steel Kegs from the People's Republic of China," A-570-093, at Vol. II, Exhibits PRC AD-8, PRC AD-11, p. 3, (Sept. 20, 2018) ("Petition"), PR 2, Appx2666-2668, Appx2746. American Keg provided all data required for Commerce's calculation of a labor SV based on the Brazilian data in its Petition.

Ningbo Master submitted and advocated for the use of 2018 Malaysian labor data published by the Malaysian Department of Statistics or, in the alternative, 2016 Mexican labor data published by INEGI. Letter from deKieffer & Horgan, PLLC, "Preliminary Surrogate Value Submission," A-570-093, at Exhibit SV-4, (Feb. 19, 2019), PR 129, Appx2830; Letter from deKieffer & Horgan, PLLC, "Final Surrogate Value Submission," A 570-093, at Exhibit SV2-6, (Apr. 29, 2019)

("Ningbo Master 2nd SV Submission"), PR 178, Appx3271.  In doing so,

Ningbo Master specifically highlighted the contemporaneity of the

Malaysian data.  Letter from deKieffer & Horgan, PLLC, "Pre-

Preliminary Comments," A-570-093, at 4 (May 9, 2019), PR 190,

Appx3303.  See also Letter from deKieffer & Horgan, PLLC, "Rebuttal

Pre-Preliminary Comments," A-570-093, at 6 (May 17, 2019), PR 193,

Appx3356; Investigation IDM at 8, PR 251, Appx3534.  By contrast, and

despite recognizing that the 2016 INEGI data were not

contemporaneous with the POI, Ningbo Master submitted no index with

which to inflate those data.  See Investigation IDM at 9, PR 251,

Appx3535.  See also Ningbo Master 2nd SV Submission at Exhibit SV2-

6, PR 178, Appx3271.

Notably, Ningbo Master limited its submission of Mexican SV

information to that noncontemporaneous labor data—the company did

not submit Mexican information to value any other factor of production.

See Ningbo Master 2nd SV Submission at 1, PR 178, Appx2951.

Consequently, the administrative record contained just two complete

SV datasets with which to value Ningbo Master's factors of production,

i.e., from Brazil and Malaysia, when the Department issued its

Preliminary Determination and Final Determination.  Commerce

limited its selection of surrogate country and SV data accordingly.

Refillable Stainless Steel Kegs from the People's Republic of China, 84

Fed. Reg. 25,745 (Dep't Commerce June 4, 2019) (prelim. determ.)

("Preliminary Determination"), PR 216, Appx3508, and accompanying

PDM at 10, PR 203, Appx3369.  Critically, this also meant that

Commerce did not find it necessary to place SV information, including

inflation indices, on the record for Mexico.

## II.    Appeal Proceedings

This Court remanded the Final Determination for further

explanation regarding the reliability of the 2018 Malaysian data.

American Keg I, 2021 WL 1206153, at *13-14.  Commerce subsequently

determined that evidence of distortions in the Malaysian labor data

"outweighed" its original data preferences such that the Malaysian data

were "not the best available information on the record."  Draft Results

of Redetermination Pursuant to Court Remand, New American Keg v.

United States, Court No. 20-00008, Slip Op. 21-30 (CIT March 23,

2021), at 6 (May 12, 2021) ("First Draft Remand"), P1RR 4, Appx1005.

After confirming that the Mexican INEGI data were substantively

6

flawed, Commerce turned to "the only remaining labor SV on the record," the Brazilian ILC data, and inflated that labor rate using the index submitted by American Keg with the original Petition. Id. at 6-7, Appx1005-1006. See also Investigation IDM at 9-10, PR 251, Appx3535-3536. Commerce changed course in its First Final Remand, however, when it relied on the 2016 ILC data for Mexico and inflated that value using the Brazilian CPI information. First Final Remand at 19, 24, P1RR 9, Appx1469, Appx 1474.

This Court issued its second remand opinion with instructions to address the question of "how the Brazilian consumer price index {was} relevant to Mexican data." American Keg II, 2022 WL 4363320, at *2. Commerce conceded the point in its Second Final Remand. Second Final Remand at 3 ("After reexamining the issue, we acknowledge that it was improper to inflate the Mexican labor wage rate from the ILC using Brazilian {CPI} data."), P2RR 5, Appx4430. However, rather than relying on the complete SV dataset available for Brazilian labor, Commerce placed 2018 ILO data on the record citing its dual preferences for (1) data from countries producing identical merchandise, and (2) ILO data. Id. at 3-4, Appx4430-4431. In doing so, Commerce

7

asserted that "{h}ad it not been for {its} stated preference for ILO data, the appropriate course of action would have been to place Mexican CPI data on the record and use it to inflate the Mexican ILC rate as the SV for labor." <u>Id.</u> at 9, Appx4436. <u>See also</u> Def.'s Br. at 25, May 8, 2023, ECF No. 90.

This Court rejected Commerce's decision to reopen the administrative record for two reasons. <u>American Keg III</u>, 2024 WL 379968, at \*2. First, this Court found that Commerce's stated policy was to consider data from producers of comparable merchandise when data for producers of identical merchandise created "data difficulties" such as those introduced by 2016 wage data that lacked a corresponding inflation adjustor. <u>Id.</u> Second, this Court held that Commerce abused its discretion to reopen the record when it "made no showing that the Brazilian wage information on the record was inaccurate or otherwise unsuitable." <u>Id.</u>, citing <u>QVD Food Co. v. United States</u>, 658 F.3d 1318, 1324 (Fed. Cir. 2011) and <u>Essar Steel Ltd. v. United States</u>, 678 F.3d 1268, 1278 (Fed. Cir. 2012).

## III.  Third Remand Proceeding

Upon receiving this Court's remand order in <u>American Keg III</u>,
Commerce confirmed that it found "no definitive information on the
record showing that the Brazilian wage information is inaccurate or
otherwise unsuitable for the calculation of Ningbo Master's margin."
<u>Third Final Remand</u> at 4, P3RR 6, Appx4482.  The agency further
confirmed that the administrative record facilitated the adjustment of
the 2016 Brazilian data to the 2018 POI, while the record did not
permit the same adjustment of the 2016 Mexican data.  <u>Id.</u>  Finally,
Commerce found that because all parties had at least "two
opportunities to submit SV information on the record to value {FOPs},"
and because "it is the parties' obligation to create an agency record," it
was neither necessary nor appropriate to reopen the record "to place the
Mexican CPI on the record to inflate the Mexican labor SV."  <u>Id.</u> at 7,
citing <u>Fine Furniture (Shanghai) Ltd. v. United States</u>, 353 F. Supp. 3d
1323, 1348 (Ct. Int'l Trade 2018), P3RR 6, Appx4485.

As a result of Commerce's reliance on accurate and reliable SV
labor information from Brazil, the agency calculated a dumping rate of

4.23 percent for Ningbo Master.  <u>Third Final Remand</u> at 11, P3RR 6,

Appx4489.

## STANDARD OF REVIEW

The statute states that:

> The Court shall hold unlawful any determination, finding, or
> conclusion, found . . . to be unsupported by substantial
> evidence on the record, or otherwise not in accordance with
> law.

19 U.S.C. § 1516a(b)(1)(B).  The Supreme Court has defined substantial

evidence as "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  <u>Consol. Edison Co. v. NLRB</u>, 305

U.S. 197, 229 (1938) (citations omitted).  Thus, the Court must consider

whether a reasonable person could conclude that the evidence relied

upon by Commerce actually supports the agency's determination.

<u>Atlantic Sugar, Ltd. v. United States</u>, 744 F.2d 1556, 1563 (Fed. Cir.

1984).  In addition, "{t}he substantiality of evidence must take into

account whatever in the record fairly detracts from its weight."

<u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951).  The

question for this Court is therefore whether, given the evidence on the

"record as a whole," the agency's conclusion was reasonable.  <u>Nippon

Steel Corp. v. United States</u>, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

Legal precedent also requires that Commerce exercise its

discretion in a reasonable manner.  Specifically:

> {W}here the agency is vested with discretion to set the
> procedures by which it administers its governing statute, the
> court reviews such decisions for abuse of discretion.  An
> abuse of discretion occurs where the decision is based on an
> erroneous interpretation of the law, on factual findings that
> are not supported by substantial evidence, or represents an
> unreasonable judgment in weighing relevant factors.  In
> abuse of discretion review, an agency action is arbitrary
> when the agency offers insufficient reasons for treating
> similar situations differently.

Jiangsu Jiasheng Photovoltaic Tech Co. v. United States, 28 F. Supp. 3d

1317, 1323 (Ct. Int'l Trade 2014).  See also Tokyo Kikai Seisakusho,

Ltd. v. United States, 529 F.3d 1352, 1360-61 (Fed. Cir. 2008) (holding

that although an agency's "power to reconsider is inherent in the power

to decide," it "may not reconsider in a manner that would be arbitrary,

capricious, or an abuse of discretion") (internal citations omitted).

Further, to the extent that the statute affords Commerce

discretion as to how to conduct its investigation, courts have explained

that "the grant of discretionary authority to an agency implies that the

exercise of discretion be predicated upon a judgment anchored in the

language and spirit of the relevant statutes and regulations."  Freeport

Minerals Co. v. United States, 776 F.2d 1029, 1031 (Fed. Cir. 1985).

11

In order to make a finding that an agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," a reviewing body

> must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). Similarly, this Court may remand a decision for being arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto Ins., 463 U.S. 29, 43 (1983).

## SUMMARY OF ARGUMENT

Commerce's Third Final Remand complies with this Court's holding in American Keg III and relies on data that it has repeatedly confirmed as accurate and complete. Notwithstanding that reasonable

12

and evidence-based outcome, however, Ningbo Master argues that
Commerce abused its discretion in relying on the administrative record
built by the parties instead of the record that Ningbo Master wishes
existed but failed to create.  This argument blatantly misreads this
Court's findings and ignores the facts and procedural history of this
litigation while reciting agency practice that is of limited relevance and
speculating as to which dataset was superior.  The Court should reject
Ningbo Master's arguments and affirm Commerce's <u>Third Final
Remand</u> in its entirety.

## ARGUMENT

### I.    Commerce's Determination to Rely on the Established Administrative Record Was Lawful

Commerce's determination to rely on 2016 Brazilian labor data,
adjusted to the 2018 POR using CPI information that has been on the
record since the beginning of the investigation, was supported by
substantial evidence and otherwise in accordance with law because that
dataset constituted the best available information.  19 U.S.C.
§ 1677b(c)(1)(B).  The record demonstrates that Brazil was economically
comparable to China during the POI and a significant producer of

comparable merchandise.[2]  PDM at 8-9, PR 203, Appx3367-3368.  <u>See</u>
<u>also</u> 19 U.S.C. § 1677b(c)(4).  The Brazilian labor data also satisfy
Commerce's general SV criteria, are based on the same industry-specific
classifications as ILO Chapter 6A data, and reflect both direct and
indirect costs in accordance with Commerce's preferences.  <u>See</u> Petition
at Vol. II, Exhibits PRC AD-8, PRC AD-11, Table 1, Note 1, Table 3,
Note 1, PR 2, Appx2666-2668, Appx2746, Appx2750.  <u>See also</u>
<u>Antidumping Methodologies in Proceedings Involving Non-Market</u>
<u>Economies:  Valuing the Factor of Production:  Labor</u>, 76 Fed. Reg.
36,092, 36,093 (Dep't Commerce June 21, 2011) ("<u>Labor</u>
<u>Methodologies</u>").  In addition, the record contained "complete" SV
information for Brazil, PDM at 10, PR 203, Appx3369, and, as this
Court noted, no party has disputed "that the Brazilian information on
the record was correct as a factual matter."  <u>American Keg III</u>, 2024 WL
379968, at *1.  No other complete and reliable SVs for labor were
available on the record.  Accordingly, Commerce's determination to rely
on the Brazilian labor SV should be affirmed.

---

[2]  Plaintiff addresses Ningbo Master's untimely and unsupported challenge to
Brazil's status as a producer of comparable merchandise below.

## A.    Commerce Lawfully Exercised Its Discretion When Relying on the Existing Administrative Record

Notwithstanding the fact that Commerce satisfied its statutory obligations in its third remand determination, Ningbo Master now contends that Commerce abused its discretion when it determined, "based upon {American Keg III} and its finding that there was nothing inaccurate or unreliable in the Brazil labor rate, that it had to rely upon the Brazil labor rate." Def.-Int.'s Br. at 1, June 7, 2024, ECF No. 99. This argument is without merit.

As Defendant has demonstrated, Commerce's Third Final Remand complies with this Court's opinion in American Keg III and properly accounts for the factual and procedural history of this case. See Def.'s Br. at 15-20, July 22, 2024, ECF No. 100. Ningbo Master's general recitation of cases in support of the principle that Commerce possesses significant discretion to place information on the record, Def.-Int.'s Br. at 5-8, ECF No. 99, does not undermine Commerce's observation that the exercise of this discretion "is not a requirement." Third Final Remand at 8, P3RR 6, Appx4486.

Similarly, while Ningbo Master cites a number of preliminary determinations in which Commerce supplemented the record to argue that the agency acted "contrary to Commerce's normal practice" by keeping the administrative record closed in this remand proceeding, Def.-Int.'s Br. at 9-13, ECF No. 99, these cases do not compel Commerce to build a record that facilitates Ningbo Master's preferred outcome— particularly when Ningbo Master failed to create that record itself. QVD, 658 F.3d at 1324 (noting that "QVD {was} in an awkward position to argue that Commerce abused its discretion by not relying on evidence that QVD itself failed to introduce into the record" and holding that "the burden of creating an adequate record lies with {interested parties} and not with Commerce"), quoting Tianjin Mach. Imp. & Exp. Corp. v. United States, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992). Moreover, an agency determination to augment the administrative record during the pendency of an investigation or review is qualitatively different than an agency determination to reopen the record after two remand orders "when the parties have introduced otherwise-acceptable evidence that allows an accurate margin calculation." American Keg III, 2024 WL 379968, at *2 (internal citation omitted). See also id.,

quoting <u>Essar</u>, 678 F.3d at 1277 ("Constant reopening and supplementation of the record would lead to inefficiency and delay in finality.").

More fundamentally, Ningbo Master's argument represents an inappropriate attempt to relitigate an issue that was already settled by this Court. Specifically, in the second remand proceeding, Commerce asserted that "{h}ad it not been for {its} stated preference for ILO data, the appropriate course of action would have been to place Mexican CPI data on the record and use it to inflate the Mexican ILC rate as the SV for labor." <u>Second Final Remand</u> at 9, P2RR 5, Appx4436. <u>See also</u> Def.'s Br. at 25, May 8, 2023, ECF No. 90. Ningbo Master likewise argued (citing many of the same cases raised in its latest comments) that Commerce had the discretion "to plac{e} {SV} information on the record, with no restriction that such {SVs} can only be submitted to the record if strictly necessary." Def.-Int.'s Br. at 4, May 8, 2023, ECF No. 86. The Court rejected these arguments to find that Commerce's decision to reopen the record based on "its preference for data from countries that produce identical, as opposed to merely comparable

17

goods" was arbitrary and capricious given the facts of this case and Commerce's stated policies.  <u>American Keg III</u>, 2024 WL 379968, at *2.

Defendant rightly observes that Ningbo Master "{does} not suggest what other justification Commerce could have used to reopen the record," Def.'s Br. at 17, ECF No. 100.  Neither has Ningbo Master established that Commerce was somehow compelled by practice to reopen the record of the third remand proceeding for an inflationary index that was available to Ningbo Master during the underlying investigation.  Accordingly, Ningbo Master has not offered any basis for finding Commerce's determination to rely on the existing administrative record to be arbitrary or capricious.

### B. Commerce Lawfully Exercised Its Discretion When Relying on a Complete and Accurate Dataset

Ningbo Master offers a secondary argument that Commerce arbitrarily relied on the availability of an inflationary index to select an SV when its "normal practice" is to apply a hierarchy as explained in the <u>Second Final Remand</u>.  Def.-Int.'s Br. at 14, ECF No. 99, citing <u>Second Final Remand</u> at 9, P2RR 5, Appx4436.  As explained in Plaintiff's May 8, 2023, comments, however, the referenced hierarchy

concerned Commerce's methodology for using ILO data and is not

germane to the issue now before the Court.  Pl.'s Br. at 29-30, May 8,

2023, ECF No. 88.  And, while Commerce does weigh numerous criteria

when choosing among potential SVs, those criteria are not a hierarchy.

See PDM at 10 ("When evaluating SV data, Commerce considers

several criteria including whether the SV data are publicly available,

contemporaneous with the period under consideration, broad-market

averages, tax and duty-exclusive, and specific to the inputs being

valued.  There is no hierarchy among these criteria."), PR 203,

Appx3369.

　　　　Moreover, as Defendant explained (and as this Court already

found), "completeness of the data is still a factor in Commerce's

determination."  Def.'s Br. at 19, ECF No. 100, citing Policy Bulletin No.

04.01:  Non-Market Economy Surrogate Country Selection Process

(Mar. 1, 2004) ("Policy Bulletin No. 04.01").  See also American Keg III,

2024 WL 379968, at *2; PDM at 10, PR 203, Appx3369 (noting the

availability of just two potential surrogate countries for which it had

"complete SV data on the record.").  Here, Commerce evaluated the

merits of the Mexican and Brazilian data as developed by the parties

and determined in accordance with <u>American Keg III</u> that "there were data difficulties with the Mexican ILC wage data because it lacked an inflation adjustor, but there was no such difficulty with the Brazilian information." <u>Third Final Remand</u> at 10, P3RR 6, Appx4488, citing <u>American Keg III</u>, 2024 WL 379968, at \*2. Thus, Commerce did not arrive at its determination in an arbitrary manner but instead appropriately accounted for the comparative weaknesses of the Mexican data.

Ningbo Master also complains that "the Brazil CPI index is also flawed" due to differences in the base currency. Def.-Int.'s Br. at 15, ECF No. 99. But as Commerce has now explained in two separate remands, Ningbo Master's argument ignores longstanding Commerce policy with respect to inflators. <u>See</u> <u>Second Final Remand</u> at 8, P2RR 5, Appx4435; <u>Third Final Remand</u> at 9, P3RR 6, Appx4487. Ningbo Master has not offered any explanation as to why that policy should be revisited or disregarded in this instance, and the Court should reject Ningbo Master's argument.

## II.    Commerce's Determination to Rely on Brazilian Labor Data Was Lawful

Ningbo Master offers a final argument that Commerce erred in relying on the Brazilian labor data because the 2016 Mexican ILC data "is the best available information on the record," regardless of whether or how the Mexican data is inflated to the 2018 POI.  Def. Int.'s Br. at 19-20, ECF No. 99.  As with its arguments regarding the proper exercise of Commerce's discretion, Ningbo Master misapplies agency practice and ignores this Court's prior rulings.  Ningbo Master also raises an issue that it failed to exhaust before the agency.

### A.    Ningbo Master Failed to Exhaust Its Argument Regarding Comparability

As an initial matter, Ningbo Master raises an unsupported and untimely argument that Brazil does not actually produce comparable merchandise.  Def. Int.'s Br. at 18-19, ECF No. 99.  Commerce accepted Brazil's production of steel wheels as the production of comparable merchandise when initiating the underlying investigation and again when relying on Brazilian labor data in its First Draft Remand.  AD Checklist at 10, PR 22, Appx2763; First Draft Remand at 7, P1RR 4, Appx1006.  Ningbo Master clearly had the opportunity to argue against

21

the comparability of Brazilian production when Petitioner advocated for

Brazilian labor data during the investigation, but Ningbo Master

declined to do so.  *See* Investigation IDM at 8-9, PR 251, Appx3534-

3535.  Ningbo Master mentioned comparability when commenting on

Commerce's <u>First Draft Remand</u>, but again chose not to present any

argument regarding the comparability pf Brazilian production.  Letter

from deKieffer & Horgan, PLLC, "Comments on Draft Remand

Results," A-570-093, at 5-6 (May 19, 2021), P1RR 7, Appx3562-3563

("{P}etitioner only provided information that Brazil produces a

supposedly comparable product, steel wheels.").  It was only in this

third remand proceeding, when Commerce relied on Brazilian labor

data for a third time, that Ningbo Master opted to raise its objection

without any substantive basis in the administrative record.  Letter from

deKieffer & Horgan, PLLC, "Comments on Draft Remand Results,"

A-570-093, at 6-7 (Mar. 4, 2024), P3RR 5, Appx4502-4503.

　　　Ningbo Master's unsupported speculation as to the comparability

of production processes cannot serve as a basis for remand.  <u>See Am.

Tubular Prods., LLC v. United States</u>, No. 13-00029, 2015 WL 5236010,

at *9 (Ct. Int'l Trade Aug. 28, 2015) (internal citations omitted)

(rejecting an argument that was "plausible in theory but unsupported in fact"). More fundamentally, well-established principles of exhaustion required Ningbo Master to challenge the comparability of Brazil's production when the suitability of Brazil's data was directly in play—if not during the investigation, then, at the latest, when Commerce relied on that dataset in the <u>First Draft Remand</u>. <u>See</u> <u>Bridgestone Ams., Inc. v. United States</u>, 34 C.I.T. 573, 579 (2010), quoting <u>IPSCO, Inc. v. United States</u>, 749 F. Supp. 1147, 1150 (Ct. Int'l Trade 1990), <u>aff'd in relevant part</u>, 965 F.2d 1056, 1061-62 (Fed. Cir. 1992) (holding that "{j}udicial economy, fairness to the parties and the need to fulfill Congress's intent . . . requires that errors . . . be raised from the outset."). The Court should therefore reject Ningbo Master's belated and speculative justification for a new remand.

## B. Commerce's Determination Regarding the Superiority of Brazilian Labor Data Was Lawful

Ningbo Master also submits that Mexican ILC data constitutes the best available information solely because Mexico produces identical merchandise regardless of contemporaneity. Def. Int.'s Br. at 19, ECF No. 99. This argument again disregards this Court's jurisprudence and Commerce's practice in weighing the suitability of alternative datasets.

First, this Court has already held that Commerce's preference for information reflecting the production of identical merchandise is not a sufficient basis for disregarding complete and accurate information reflecting the production of comparable merchandise. American Keg III, 2024 WL 379968, at *2. That finding was based on Commerce's stated policy that it "may consider" relying on countries producing comparable merchandise if "considering a producer of identical merchandise leads to data difficulties." Id., citing Policy Bulletin No. 04.01. Here, as both this Court and Defendant have recognized, the ILC labor data for Mexico were not contemporaneous and could not be inflated with information on the administrative record. See American Keg III, 2024 WL 379968, at *2; Def.'s Br. at 22, ECF No. 100. The Mexican labor data therefore failed to satisfy Commerce's SV criteria, and Commerce acted in accordance with its own policy when determining to rely on a dataset encompassing the production of comparable merchandise that did satisfy those criteria.

Second, Ningbo Master's suggestion that the deficiency in the Mexican data can be overcome with reference to or use of the Brazilian CPI is nonsensical. Def. Int.'s Br. at 20-21, ECF No. 99. As was the

case when Commerce adopted that same methodology in the <u>First Final Remand</u>, there is no factual basis for finding that a Brazilian CPI is relevant to a Mexican dataset. See <u>American Keg II</u>, 2022 WL 4363320, at *2 (remanding for further explanation "in view of Commerce's published guidance stating that '{t}he Department inflates the selected earnings data . . . using the <u>relevant</u> {CPI}'") (emphasis added in quote), quoting <u>Labor Methodologies</u>, 76 Fed. Reg. at 36,094. Commerce has already determined that using a Brazilian CPI to adjust Mexican data is inappropriate, <u>Second Final Remand</u> at 3, P2RR 5, Appx4430, and Commerce has further affirmed that proximity and comparability between Brazil's and Mexico's per capita gross national product "are not dispositive that the rate of inflation experienced by each country is the same," <u>Third Final Remand</u> at 10, P3RR 6, Appx4488. The fact that the Brazilian CPI has a "very small impact" on the Mexican wage rate therefore has no bearing on the relative merit of the unadjusted Mexican labor data as compared to the adjusted Brazilian labor data, and Ningbo Master has not established why the Brazilian CPI would be appropriate for use with Mexican data at all. See Def.-Int.'s Br. at 20-22, ECF No. 99.

Third, Ningbo Master's reliance on <u>Chlorinated Isocyanurates</u>
<u>from China</u> as precedent for relying on "less contemporaneous {SV}
data" when such data is more specific to the subject merchandise is
misplaced.  <u>See</u> Def.-Int.'s Br. at 21, ECF No. 99, citing <u>Chlorinated</u>
<u>Isocyanurates from the People's Republic of China</u>, 86 Fed. Reg. 22,932
(Apr. 30, 2021) (final results 2018-2019) and accompanying IDM at
Comment 4.  That case makes clear that Commerce did inflate the "less
contemporaneous" data at issue such that it was sufficiently
contemporaneous and, in any event, that case does not compel
Commerce to prioritize product specificity over contemporaneity.
<u>Chlorinated Isocyanurates from China</u> at Comment 4.  Here, Commerce
reasonably determined that information on the record regarding
Brazilian labor costs satisfied its preference for contemporaneous data,
even as the Mexican labor data created "data difficulties" because it
could not be indexed to the POI using information on the record.  <u>See</u>
<u>Third Final Remand</u> at 4, P3RR 6, Appx4482.  <u>See also</u> Policy Bulletin
No. 04.01.  Commerce was therefore permitted, pursuant to its own
policy, to expand its consideration of SV data beyond sources reflecting
production of identical merchandise to those sources encompassing the

production of comparable merchandise.  <u>See</u> Policy Bulletin No. 04.01.

Given that the Brazilian labor data satisfied Commerce's SV criteria

and did not introduce any data difficulties, Commerce acted reasonably

in relying on those data to the exclusion of the noncontemporaneous

Mexican data.

## CONCLUSION

For all of these reasons, Plaintiff respectfully requests that this

Court sustain Commerce's <u>Third Final Remand</u> in its entirety.

Respectfully submitted,

<u>/s/ Whitney M. Rolig</u>
Whitney M. Rolig
Andrew W. Kentz
Nathaniel Maandig Rickard

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave., N.W.
Suite 700
Washington, DC 20036
(202) 331-4040

*Counsel to American Keg Company*

Dated:  August 5, 2024

27

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **NEW AMERICAN KEG, d/b/a** ) | |
| **AMERICAN KEG COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Court No. 20-00008** |
| ) | |
| **UNITED STATES,** ) | |
| ) | **Hon. M. Miller Baker,** |
| **Defendant,** ) | **Judge** |
| ) | |
| **and** ) | |
| ) | |
| **NINGBO MASTER** ) | |
| **INTERNATIONAL TRADE** ) | |
| **CO., LTD, and GUANGZHOU** ) | |
| **JINGYE MACHINERY CO., LTD.** ) | |
| ) | |
| **Defendant-Intervenors.** ) | |
| ) | |

## <u>CERTIFICATE OF COMPLIANCE WITH THE</u><br><u>WORD LIMITATION</u>

I, Whitney M. Rolig, hereby certify that this brief, exclusive of the

table of contents, table of authorities, glossary, certifications of counsel,

and counsel's signature block, but including headings, footnotes, and

quotations, contains 4,986 words, according to the word count function

of the word processing program used to prepare this brief, and therefore

**Court No. 20-00008**

complies with the word limitations as set forth in ¶ 2(B) of the Standard

Chambers Procedures of this Court, as amended on October 3, 2016.

/s/ Whitney M. Rolig
Whitney M. Rolig
**PICARD KENTZ & ROWE LLP**

*Counsel to American Keg Company*

2