**Slip Op. 24-129**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

**Court No. 20-00008**

NEW AMERICAN KEG, d/b/a
AMERICAN KEG COMPANY,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

NINGBO MASTER INTERNATIONAL
TRADE CO., LTD., and GUANGZHOU
JINGYE MACHINERY CO., LTD.,

*Defendant-Intervenors.*

Before: M. Miller Baker, Judge

**OPINION**

[The court sustains Commerce's third remand redetermination.]

Dated: November 25, 2024

*Whitney M. Rolig*, *Andrew W. Kentz*, and *Nathaniel Maandig Rickard*, Picard Kentz & Rowe LLP, Washington, DC, on the comments for Plaintiff.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; and *Ashley Akers*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the comments for Defendant. Of counsel on the comments was *Vania Wang*, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*Gregory S. Menegaz* and *Alexandra H. Salzman*, deKieffer & Horgan, PLLC, Washington, DC, on the comments for Defendant-Intervenors.

*Baker*, Judge: This long-running antidumping saga involving steel beer kegs from China returns for a fourth time. In its last visit, domestic producer American Keg challenged the Department of Commerce's decision to place contemporaneous (2018) Mexican wage data on the record to determine surrogate labor costs for Chinese producer and mandatory respondent Ningbo Master. *See* Slip Op. 24-11, at 3, 2024 WL 379968, at *1 (CIT Jan. 31, 2024) (*Am. Keg III*).[1] The court held that the agency abused its discretion in so doing. Contrary to the stated rationale, *see* Appx4436, informational accuracy did not require that step when the non-contemporaneous (2016) Brazilian wage data on the existing record—as adjusted to 2018 using that country's consumer price index (CPI), also on the

---

[1] The court presumes the reader's familiarity with its previous opinions. *See also* Slip Op. 21-30, 2021 WL 1206153 (CIT Mar. 23, 2021) (*Am. Keg I*); Slip Op. 22-106, 2022 WL 4363320 (CIT Sept. 13, 2022) (*Am. Keg II*).

record—were accurate. *Am. Keg III*, Slip Op. 24-11, at 4, 2024 WL 379968, at *1.

The court also held that the Department abused its discretion insofar as it reopened the record because of its preference for data from countries producing identical (rather than merely comparable) merchandise.[2] Agency policy is to use information from nations making the latter when there are "difficulties" with figures from countries manufacturing the former, *id.* at 4, 6, 2024 WL 379968, at *2, and because the burden of creating an adequate record lies with the parties, *id.* at 4–5, 2024 WL 379968, at *2. Here, there were difficulties with the existing Mexican labor information because it was non-contemporaneous (2016), *id.* at 4, 2024 WL 379968, at *2, and Ningbo Master failed to place contemporaneous statistics from that nation or the applicable CPI inflator on the record, Appx4485.

On remand, Commerce found the non-contemporaneous Brazilian wage information suitable for determining Ningbo Master's margin and adjusted it using that country's CPI inflator that was also on the record. Appx4482. At the same time, the Department rejected the company's request to reopen the record to allow submission of a Mexican CPI inflator to adjust the latter country's wage data. Appx4485. It reasoned that the former nation's figures were "equally reliable," save for the agency's "general preference" for a country producing identical merchandise. Appx4484. As the

---

[2] Mexico produces identical steel kegs, but Brazil only produces "comparable" products. *See id.* at 3, 2024 WL 379968, at *1.

**Ct. No. 20-00008** Page 4

applicable CPI inflator on the existing record could make those statistics contemporaneous, it was unnecessary to collect new information. Appx4485.

The agency also rejected Ningbo Master's argument that the Mexican labor data are the best available information, either with the Brazil CPI inflator or with no adjustment at all. Appx4487. It explained that the record does not show whether "the rate of inflation experienced" by those countries is the same. Appx4488. Moreover, the adjusted Brazilian wage rate data satisfied the agency's contemporaneity preference, while the unadjusted Mexican figures did not. *Id.*

Ningbo Master now contends that Commerce's decision not to reopen the record to add a Mexican CPI inflator was arbitrary and capricious. ECF 99, at 5–15. The company also assails the Department's reliance on the Brazilian wage figures and CPI inflator, repeating its argument that the non-contemporaneous Mexican wage information—even without an inflator—is still the "best available information" on the record such that use of the former is not supported by substantial evidence. *Id.* at 15–22. As explained below, the court rejects both lines of attack and sustains the agency's redetermination.

I

In challenging Commerce's decision not to reopen the record and use a Mexican CPI inflator to adjust that nation's wage information, Ningbo Master asserts several theories. It first argues the failure to allow the submission of this new data was arbitrary because the

Department sometimes exercises its discretion to do so. *Id.* at 5–9.

But discretionary authority need not be used in every case; instead, it suffices if the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). That's exactly what happened here: Commerce explained that it was unnecessary to reopen the record to inflate the Mexican wage figures when the existing Brazilian information and applicable CPI adjustor suited the agency's purposes. Appx4485.

The company also contends that "Commerce has a frequent practice" of itself placing CPI inflators on the public record. ECF 99, at 9–10. The company cites several such examples. *Id.* at 10–13. It asserts that the Department's failure to do so here is arbitrary because it was "contrary to well-established practice." *Id.* at 13. Those instances, however, did not involve *reopening* a record after remand when the existing one "allow[ed] an accurate margin calculation." *Am. Keg III*, Slip Op. 24-11, at 5, 2024 WL 379968, at *2. Ningbo Master is in the "awkward position [of] argu[ing] that Commerce abused its discretion by not relying on evidence that [the company] itself failed to introduce into the record." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011). As "the burden of creating an adequate record lies with interested parties and not with Commerce," *id.* (cleaned up), the agency reason-

Ct. No. 20-00008 Page 6

ably chose to rely on the record built by the parties, which permitted an accurate margin calculation.

In a variation on the same theme, Ningbo Master asserts that the Department acted contrary to normal practice, and thus arbitrarily, by not selecting the existing Mexican wage data as the best available information and then placing that nation's CPI inflator on the record. ECF 99, at 14–15. The company quotes the second remand results, where the agency stated that it

> applies a hierarchy in selecting the most appropriate labor values, does not typically consider the inflator determinative of which data to select, and may place inflators on the record during an administrative proceeding when necessary. Ordinarily, Commerce determines how to inflate the data (if necessary) after the data has been selected.

ECF 99, at 14 (quoting Appx4435–4436).

There are at least two problems with Ningbo Master's argument. To begin with, it relies on reasoning that the court has already rejected. As explained in *American Keg III*, the Department's reopening of the record to use new contemporaneous Mexican wage data was arbitrary because the existing record—created by the parties—allowed for an accurate margin calculation. Slip Op. 24-11, at 4–5, 2024 WL 379968, at *2. It would be just as arbitrary to reopen the record to use a new CPI inflator from that nation to adjust

the existing non-contemporaneous Mexican labor rate information.

Moreover, the agency's (since-recanted) reasoning that the company invokes is flawed on its own terms. That discussion cites (*see* Appx4436 nn.38–39) a Commerce notice announcing the methodology for calculating labor value *after* the Department has selected a primary surrogate country. *See Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production: Labor*, 76 Fed. Reg. 36,092, 36,094 (Dep't Commerce June 21, 2011) (explaining that the Department "will value [a non-market-economy] respondent's labor input using industry-specific labor costs prevailing *in the primary surrogate country*, as reported in Chapter 6A of the [International Labour Organization] Yearbook of Labor Statistics" under a methodology applying various "filters") (emphasis added); *id.* at 36,094 n.11 (explaining the "filters"). The disputed issue in this case involves an antecedent question: the *selection* of a surrogate country for labor valuation.[3] As discussed below, a different agency practice governs that subject. *See* Import Administration Policy Bulletin 04.1, *Non-Market Economy Surrogate Country Selection Process* (Mar. 1, 2004).

Finally, Ningbo Master maintains that the CPI inflator (based on Brazilian currency, the real) was a

---

[3] Commerce originally selected Malaysia as the primary surrogate country. Appx3529. The Department has since abandoned that choice as to labor costs, *see* Appx1452–1457, and instead (finally) settled on Brazil.

mismatch for the wage data from that country (denominated in U.S. dollars) and thus "introduce[d] inaccuracies" that warranted reopening the record. ECF 99, at 15. The Department, however, noted that under its practice, "U.S. dollar–denominated surrogate values should be inflated based on the country in which the expense was incurred, not the currency in which it was reported." Appx4487 (quoting 79 Fed. Reg. 57,047 and accompanying Issues & Decision Memo. at Cmt. 4). The company does not outline the "inaccuracies" that it contends result from this approach, and in any event the agency reasonably explained its choice.

II

Ningbo Master argues in the alternative that even if Commerce did not abuse its discretion in declining to reopen the record to allow use of the Mexican CPI, its decision to rely on the Brazilian wage data and inflator is unsupported by substantial evidence. ECF 99, at 15. The company asserts that the Mexican wage data on the record were still the best available information for the margin calculation, either inflated using the Brazilian CPI or with no such adjustment. *Id.* at 20–22.

When, as here, the agency must determine the normal value of a product from a nonmarket-economy country, its "valuation of the factors of production shall be based on the best available information" as to the value of those factors in a nation *with* a market economy. 19 U.S.C. § 1677b(c)(1). Because Congress did not define "best available information," Commerce identified "non-dispositive policy preferences" to guide

its selection. *Xiamen Int'l Trade & Indus. Co. v. United States*, 953 F. Supp. 2d 1307, 1312 (CIT 2013). "[T]he Department prefers surrogate[ ] values that are contemporaneous with the period of review, publicly available, product-specific, representative of broad market average prices, and free of taxes and import duties." *Id.* at 1312–13. The agency also has a general preference for surrogate values from producers of identical goods, but will use figures from "countries that produce a broader category of reasonably comparable merchandise" when the former present "data difficulties." Policy Bulletin 04.1, at 2 n.6; Appx4484.

As noted above, the Department found "no definitive information on the record" showing the Brazilian wage data were inaccurate. Appx4482. Commerce acknowledged its "general preference" for identical subject merchandise when calculating surrogate values, Appx4484, but found that both countries' wage data were "equally reliable" in all other respects, *id.* And it acknowledged that the inability to inflate the non-contemporaneous Mexican figures was a "data difficult[y]." *Id.* Thus, the Department faced using either the Brazilian information, which satisfied each of the non-dispositive policy preferences, or its Mexican counterpart, which did not. The agency determined that its general preference for a surrogate value derived from a country producing identical merchandise "does not outweigh" the Brazilian data's satisfaction of the other preferences. Appx4484–4485; *see Xiamen*, 953 F. Supp. 2d at 1312–13 ("Commerce has not identified a hierarchy among these factors, and the weight accorded to a factor varies depending on the facts of each case.").

Ningbo Master attacks that decision, arguing that the Mexican data are preferable because that country produces identical merchandise. ECF 99, at 18. But Commerce's preference for a surrogate value from a country making the same goods is just that: a *preference*, one of several non-dispositive factors the agency considers. *See Xiamen*, 953 F. Supp. 2d at 1312; *see generally* Policy Bulletin 04.1. The Department found that its predilection for data contemporaneity carried more weight than its partiality for product likeness. Appx4484. The company may be unhappy with how the agency weighed those factors, but the latter's decision is supported by substantial evidence.

Put differently, it appears Ningbo Master seeks to convert a regulatory preference into a substantive rule of decision. But because the statute requires Commerce to identify the "best available information" by comparing the datasets on the record, the Department cannot point to a regulatory preference as its only reason—rather, a preference can be a tiebreaker between datasets that are otherwise equal. *See NTSF Seafoods Joint Stock Co. v. United States*, Ct. Nos. 20-00104, 20-00105, Slip Op. 22-38, at 50–51, 2022 WL 1375140, at *17 (CIT Apr. 25, 2022) (citing *Peer Bearing Co.– Changshan v. United States*, 752 F. Supp. 2d 1353, 1373 (CIT 2011)). Moreover, to the extent this case presents *competing* regulatory preferences (identical merchandise versus contemporaneity), Policy Bulletin 04.1 explains how the agency will resolve that matter. It followed those instructions here.

Ningbo Master also argues that there are no actual "data difficulties" with the Mexican wage information

because Commerce can simply apply the Brazilian inflator. ECF 99, at 20. But that issue has already been resolved. When this case returned from the initial remand, the Department used a Brazilian inflator on Mexican labor data. The court remanded again because the agency failed to explain how it was appropriate to use an inflator applicable to a different country, especially in view of its published guidance calling for the use of the "*relevant* Consumer Price Index." *Am. Keg II*, Slip Op. 22-106, at 6, 2022 WL 4363320, at *2 (emphasis in original) (quoting 76 Fed. Reg. at 36,094).

Commerce then acknowledged that such an adjustment would be inappropriate. Appx3638. In the most recent remand, it explained that it "has no practice of adjusting the underlying data from one alternative surrogate country using another [such] country's CPI data." Appx4487. In asserting that the Department should nevertheless do so here, Ningbo Master's only arguments are that the adjustment would be minimal and that Brazil is economically comparable to Mexico. ECF 99, at 20, 21–22. But that is not the agency's standard practice. *See* 76 Fed. Reg. at 36,094 (describing practice of inflating earnings data "using the *relevant* Consumer Price Index") (emphasis added). Commerce also observed that the two countries being "economically comparable" in terms of GDP does not intrinsically show that "the rate of inflation experienced by each country is the same." Appx4488. Ningbo Master points to no other evidence to support its conclusion that the Brazilian inflator is "relevant" to Mexico.

The company also asserts that even without an inflator, the Mexican wage data are superior to the

Brazilian. ECF 99, at 19, 21. It overlooks that the issue before the court "is not to evaluate whether the information Commerce used was actually the best available, but rather whether a reasonable mind could conclude that [the agency] chose the best available information." *Jiangsu Zhongji Lamination Materials Co. (HK) v. United States*, Ct. No. 21-00138, Slip Op. 23-84, at 11, 2023 WL 3863201, at *4 (CIT June 7, 2023) (cleaned up) (quoting *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011)). Given the choice between non-contemporaneous and non-inflatable Mexican data and non-contemporaneous but inflatable Brazilian data, the Department chose the latter. *Id.* That was reasonable.

Finally, Ningbo Master contends that Commerce cannot rely on the Brazilian data because that country does not produce a comparable product. ECF 99, at 18–19. The company failed to exhaust its administrative remedies by not definitively raising the issue before the agency.[4] *See Mittal Steel Point Lisas Ltd. v. United*

---

[4] Even though American Keg advocated for the use of Brazilian wage information in the initial investigation, Ningbo Master did not challenge "the comparability of Brazilian production." ECF 101, at 22. And when commenting on Commerce's draft first remand redetermination, which found that Brazil manufactures comparable goods, the Chinese company's only response was an aside that its American counterpart submitted "information that Brazil produces a *supposedly* comparable product, steel wheels." Appx3563 (emphasis added). Such "[p]assing references do not raise arguments." *I.D.I. Int'l Dev. & Inv. Corp. v. United States*, Ct. No. 20-00107, Slip Op. 21-82, at 32, 2021 WL 3082807, at *11 (CIT July 6, 2021) (citing *ArcelorMittal*

*States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008) (holding parties are "procedurally required to raise [an] issue before Commerce at the time [the agency] was addressing the issue"); *Dorbest, Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (finding the exhaustion requirement justified because "fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice") (quoting *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)).

\* \* \*

Just as beer kegs eventually (and sadly) run dry, all litigation—even this case—must end in the fullness of time. The court sustains the Department's third remand redetermination. A separate judgment will issue. *See* USCIT R. 58(a).

Dated: November 25, 2024   /s/ *M. Miller Baker*
       New York, NY   Judge

---

*France v. AK Steel Corp.*, 700 F.3d 1314, 1325 n.6 (Fed. Cir. 2012)).